IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WATCHOUS ENTERPRISES, L.L.C.,

          Plaintiff,

v.                                                  Case No. 16-1432-JTM

PACIFIC NATIONAL CAPITAL, et al.,

          Defendants.

# **ORDER**

       Nonparty Charles J. Hyland, former counsel for defendants Pacific National Capital ("Pacific") and Waterfall Mountain USA LLC, Waterfall Mountain LLC, and Waterfall International Holdings Limited (collectively, "Waterfall"), has filed a motion to quash a subpoena issued by plaintiff Watchous Enterprises, LLC ("Watchous") (ECF No. 60). Hyland objects that complying with the subpoena would require him to disclose his privileged communications with his then-clients. Pacific has filed briefs in support of the motion to quash. Waterfall has remained silent on the matter. As discussed below, the motion is taken under advisement and the parties are directed to take further action.

I.      **Background**

In June 2016, Watchous and Pacific entered an agreement whereby Pacific would attempt to find a joint venturer, lender, or investor for certain of Watchous's oil and gas interests. Pacific introduced Watchous to Waterfall, and Watchous and Waterfall eventually executed a letter of intent ("LOI") to become joint venturers. Watchous deposited $175,000 into Waterfall's bank account in accordance with the terms of the LOI. However, because Watchous and Waterfall never reached a final agreement, the LOI required Waterfall to refund the deposit.

Watchous filed this lawsuit in December 2016, alleging the deposit was never refunded. Hyland entered an appearance as counsel for all defendants (Waterfall funded Pacific's defense). In April 2017, the parties reached a settlement whereby one or more of the defendants agreed to pay $175,000 to Watchous in three installments. When no payment was made on the first installment date, Watchous amended its complaint to add, among other things, a claim against Pacific and Waterfall for breach of the settlement agreement. In June 2017, Hyland withdrew from representing Waterfall and Pacific.

In August 2017, Pacific, jointly with newly added defendants Charles A. Elfsten and Mark M. Hasegawa, filed an answer to the amended complaint, in which Pacific denied

being a party to the settlement agreement.[1]  Specifically, Pacific stated that it "did not give Charles Hyland express authorization or implied consent to settle with Plaintiff on the terms as alleged by Plaintiff," such that Hyland lacked authority to bind Pacific to the agreement.[2] Thus, whether Pacific gave Hyland authority to enter the settlement agreement has become an issue materially relevant to Watchous's breach-of-settlement-agreement claim.

Seeking discovery on this issue, Watchous served a subpoena duces tecum on Hyland. The subpoena requested:

> Copies of any and all documents or communications: 1) expressly or impliedly granting you authority to extend the offer conveyed by your email of April 3, 2017, to settle the litigation; 2) allowing any person or defendant to direct the litigation, or settlement of the litigation, on behalf of Pacific National Capital; 3) showing when Pacific National Capital was notified of the settlement; 4) showing that Pacific National Capital ratified the settlement; 5) showing that Pacific National Capital repudiated the settlement, claimed that you entered into without authorization, or objected to the terms of the offer or settlement; 6) showing that Pacific National Capital authorized you to stay the captioned litigation after the settlement was reached.[3]

Hyland moves to quash the subpoena on the ground that complying would require him to produce communications protected by the attorney-client privilege. Hyland states the documents in his possession responsive to the subpoena are e-mails sent and received

---

[1] ECF No. 56 at 6.  By this time, Pacific was represented by new (and current) counsel. ECF No. 52.

[2] ECF No. 56 at 19.

[3] ECF No. 58 at 5.

between Hyland and both Pacific and Waterfall. He implies there are no responsive documents showing communications between Hyland and Pacific only.

Pacific has filed briefs in support of Hyland's motion to quash.[4] Pacific agrees with Hyland that the responsive e-mails are communications protected by the attorney-client privilege and argues it did not waive the privilege. Waterfall, which has been completely inactive in this case since Hyland withdrew as counsel,[5] has not asserted attorney-client privilege or otherwise responded to the instant motion or Watchous's notice of intent to issue a subpoena to Hyland.[6]

## II.   Legal Standards

Fed. R. Civ. P. 45 governs the issuance of subpoenas to non-parties, such as Hyland. Rule 45(d)(3)(A)(iii) directs the court to quash a subpoena that "requires disclosure of

---

[4]ECF Nos. 63 & 66.

[5]Waterfall has ignored orders to secure new counsel (ECF No. 37) and to show cause why default judgment should not be entered against it for failure to secure counsel (ECF No. 39). Waterfall has further failed to respond to the amended complaint (ECF No. 40). The undersigned suspects default will soon be entered against Waterfall—either upon a motion filed by plaintiff or by the presiding U.S. District Judge, J. Thomas Marten, *sue sponte*, based on Waterfall's failure to respond to the show cause order.

[6]Watchous states it served a copy of the notice of intent to subpoena on Waterfall via mail to defendant William Mournes, whom Hyland has stated was his "principle [sic] contact" at Waterfall. *See* ECF No. 60 at 1-2; ECF No. 65 at 11; ECF No. 67 at 5. Hyland states he contacted Waterfall's non-Kansas attorney (who is not of record in this case), and the attorney advised Waterfall does not waive the attorney-client privilege. ECF No. 60 at 4. The record reflects Waterfall was subsequently mailed the motion to quash, briefs addressing the dispute, and the court's order expediting briefing on the motion.

privileged or other protected matter, if no exception or waiver applies." "In federal court, the determination of what is privileged depends upon the dictates of Rule 501 of the Federal Rules of Evidence."[7] Because subject-matter jurisdiction in this case is based on diversity, Rule 501 directs that "state law governs privilege."

> Under Kansas law, the essential elements of the attorney-client privilege are:
>
> (1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) the communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless privilege is waived.[8]

The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."[9] It protects "advice given by an attorney in the course of representing the client," as well as "disclosures of the client . . . incidental

---

[7]*Rowan v. Sunflower Elec. Power Corp.*, 2016 WL 3745680, No. 15-9227-JWL-TJJ, at *3 (D. Kan. Jul 13, 2016) (citing *Tect Aerospace Wellington, Inc. v. Thyssenkrupp Materials NA*, 2009 WL 1313230, No. 07-1306-JTM, at 2 (D. Kan. May 12, 2009)); *see also ERA Franchise Sys., Inc. v. N. Ins. Co.*, 183 F.R.D. 276, 278 (D. Kan. 1998).

[8]*Rowan*, 2016 WL 3745680, at *3 (citations omitted); *ERA Franchise,* 183 F.R.D. at 278 (citations omitted); *Cypress Media, Inc. v. City of Overland Park*, 997 P.2d 681, 689 (Kan. 2000) (quoting *State v. Maxwell*, 691 P.2d 1316 (Kan. Ct. App. 1984)).

[9]*Klassen v. Univ. of Kan. Sch. of Med.*, 2016 WL 6138169, No. 13-2561-DDC-KGS, at *3 (D. Kan. Oct. 21, 2016) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

to the professional relationship."[10] The privilege does not apply, however, "to every communication between attorney and client."[11] For example, K.S.A. § 60-426(b) lists exceptions to the privilege, and many other instances of non-privileged attorney-client communications have been recognized by this court.[12]

A person seeking to assert the attorney-client privilege as a bar to discovery has the burden of establishing that it applies.[13] Rule 45(e)(2) provides, "A person withholding subpoenaed information under a claim that it is privileged . . . must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged . . . will enable the parties to assess the claim." To carry his burden on a motion to quash, the subpoenaed person "must provide sufficient information to enable the court to determine whether each element of the asserted privilege is satisfied. A claim of privilege fails upon a failure of

---

[10]K.S.A. § 60-426(c)(2); *see also Upjohn Co.*, 449 U.S. at 390 ("[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.").

[11]*Cypress Media*, 997 P.2d at 690.

[12]*See, e.g., In re Syngenta*, No. 14-md-2591, 2017 WL 386835, at *4 (D. Kan. Jan. 27, 2017).

[13]*Harlow v. Sprint Nextel Corp.*, No. 08-2222, 2012 WL 646003, at *5 (D. Kan. Feb. 28, 2012) (citing *Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540, 542 (10th Cir. 1984)); *Johnson v. Gmeinder*, 191 F.R.D. 638, 642 (D. Kan. 2000) (applying Kansas law).

proof as to any element. A 'blanket claim' as to the applicability of a privilege does not satisfy the burden of proof."[14]

In addition, the burden of proving the privilege has not been waived remains with the person asserting the privilege.[15] Typically, waiver will be found if a client discloses confidential information to a third party. The Kansas Court of Appeals has recognized the joint-client doctrine, however, ruling that when "two or more persons employ an attorney as their common attorney, their communications to him in the presence of each other are regarded as confidential" and do not waive the privilege.[16] "The rule goes further and

---

[14]*Cypress Media*, 997 P.2d at 693 (quoting *ERA Franchise*, 183 F.R.D. at 278-79 (internal citations omitted)).

[15]*Johnson*, 191 F.R.D. at 642-43 (applying Kansas law); *Maxwell*, 691 P.2d at 1319.

[16]*Maxwell*, 691 P.2d at 1320; *see also id.* ("Where two or more persons jointly consult an attorney concerning mutual concerns, their confidential communications with the attorney, although known to each other, will be privileged in controversies of either or both of the clients with the outside world."). As Watchous notes, the Kansas Supreme Court has mentioned that codification of the attorney-client privilege in K.S.A. § 60-426 may affect whether the joint-defense privilege is recognized in Kansas, but has not decided the issue. *See Associated Wholesale Grocers, Inc. v. Americold Corp.*, 975 P.2d 231, 239 (Kan. 1999). "Where jurisdiction rests solely on diversity of citizenship and there is no controlling decision by the highest court of a state, a decision by an intermediate court should be followed by the Federal court, absent convincing evidence that the highest court of the state would decide otherwise." *MidAm. Constr. Mgmt., Inc. v. MasTec N. Am., Inc.*, 436 F.3d 1257, 1262 (10th Cir. 2006). This court has not been presented with convincing evidence that the Kansas Supreme Court would deviate from *Maxwell*'s recognition of the joint-client doctrine. Indeed, K.S.A. § 60-426 itself appears to recognize the doctrine in discussing "a communication . . . relevant to a matter of common interest between *two or more clients* if made by any of them *to an attorney whom they have retained in common*." K.S.A. § 60-426(b)(5) (emphasis added) (setting forth a privilege exception when a communication is offered in a later action between any such joint clients). Accordingly, the court will apply

provides that where several persons employ an attorney and a third party seeks to have communications made therein disclosed, none of the several persons—not even a majority—can waive this privilege."[17] However, the court does not hold (and the parties do not assert) that the privilege can *never* be waived when two or more people are jointly represented—when *all* clients waive the privilege the privilege is, indeed, waived.[18] In addition, although not addressed in *Maxwell,* there is authority for concluding a single client may waive privilege over communications affecting only him.[19]

Waiver may be implicit, as well as explicit. An implied waiver "may be founded on delay or inaction in asserting a known right."[20] For example, in *S.E.C. v. McNaul*, the court held former clients implicitly waived the attorney-client privilege when they asserted only blanket objections to a subpoena, "without specifically showing why they claimed any of the documents were privileged," and then failed to respond to a show cause order directing them to show why their motion to quash should not be denied.[21] An implied waiver may also be

---

*Maxwell's* rulings on the joint-client doctrine.

[17]*Maxwell*, 691 P.2d at 1320 (citing 81 Am. Jur. 2d, Witnesses § 189).

[18]*See* David M. Greenwald, Robert R. Stauffer, & Erin R. Schrantz, Testimonial Privileges § 1:104 (2015 ed.) ("Each client retains the power to waive the privilege as to his or her own communications with the lawyer; the privilege for joint communications must be waived by all.").

[19]*See id.*

[20]*S.E.C. v. McNaul*, 277 F.R.D. 439, 443 (D. Kan. 2011).

[21]*Id.*

found when a party puts privileged communication at issue.[22] In *McNaul*, the court ruled, "[w]hen a party puts a privileged matter in issue as evidence in a case, it . . . waives the privilege as to all related privileged matters on the same subject."[23] There, the court held that because the former clients argued they had acted upon the advice of counsel, they "placed in issue whether they received advice from the Firm," and thereby implicitly waived the attorney-client privilege as to communications on the subject.[24]

### III. Analysis

As the record now stands, Hyland has failed to satisfy his burdens of establishing (1) that the attorney-client privilege protects all communications responsive to the subpoena and (2) that, even assuming the privilege applies, the privilege has not been waived by both Pacific and Waterfall.

First, Hyland has failed to establish the attorney-client privilege protects responsive documents from disclosure. As noted above, Hyland was required to "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged . . . will enable the parties to assess the claim."[25]

---

[22] *Id.*

[23] *Id.* at 444 (quoting 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2016.6 (3d ed. 2010)).

[24] *Id.*

[25] Fed. R. Civ. P. 45(e)(2).

Hyland has not produced a privilege log or otherwise provided a detailed description of the documents. The court, therefore, does not possess sufficient information to enable it to determine whether each element of attorney-client privilege is satisfied with respect to each communication. "A 'blanket claim' as to the applicability of a privilege does not satisfy the burden of proof."[26]

Second, Hyland has not adequately addressed the question of implicit waiver by Pacific and by Waterfall. Based on the caselaw discussed above, the court finds it very possible that Pacific waived privilege over the disputed emails by placing the communications at issue in its answer to the amended complaint, and that Waterfall waived the privilege in failing to assert it in the face of the instant dispute.

Despite the shortcomings in Hyland's arguments, the court declines to deny the motion to quash and to order Hyland to produce the responsive e-mails at this time. It is well-settled that the attorney-client privilege belongs to the client, not the attorney,[27] and "should not be set aside lightly."[28] Thus, the undersigned will follow the approach taken in

---

[26]*Cypress Media*, 997 P.2d at 693 (quoting *ERA Franchise*, 183 F.R.D. at 278-79 (internal citations omitted)).

[27]*Maxwell*, 691 P.2d at 1320; K.S.A. 60-426(a).

[28]*Wallace, Saunders, Austin, Brown & Enochs, Chartered v. Louisburg Grain Co.*, 824 P.2d 933, 940 (Kan. 1992).

other cases in this district and give the clients a direct opportunity to establish the applicability of the privilege, including the absence of waiver.[29]

First, Hyland is ordered to turn over copies of all documents he identified as responsive to the subpoena to his former clients, Pacific and Waterfall. Hyland shall provide the copies no later than **October 4, 2017.**

Second, should Pacific or Waterfall wish to assert attorney-client privilege protection over any of the responsive documents, it shall produce a detailed description of the document that would allow the court and parties to determine whether every element of the privilege has been meet. This description, which is typically set out in a privilege log, must contain the following:

1. A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;

2. The date upon which the document was prepared;

3. The date of the document (if different from # 2);

---

[29] *See, e.g., In re Syngenta*, No. 14-md-2591, 2017 WL 1106257, at *2 (D. Kan. March 24, 2017) (former client ordered to submit its own privilege log in support of motion to quash subpoena issued to former counsel); *McNaul*, 277 F.R.D. at 441 (giving clients twenty days to satisfy Fed. R. Civ. P. 45's requirement that withheld documents be described in a manner that would allow the parties to assess the privilege claims); *Phalp v. City of Overland Park, Kan.*, No. 00-2354, 2002 WL 1162449, at *4 (D. Kan. May 8, 2002) (giving party clients, as well as non-party attorney-movant, twenty days to provide detailed descriptions of withheld documents); *see also Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Harverstraw, Inc.*, 211 F.R.D. 658, 665 (D. Kan. 2003) (ordering subpoenaed company moving to quash on privilege grounds to provide a privilege log within twenty days).

4. The identity of the person(s) who prepared the document;

5. The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed;

6. The purpose of preparing the document, including an evidentiary showing, based on competent evidence, "supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent;" a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, "that the documents do not contain or incorporate non-privileged underlying facts;"

7. The number of pages of the document;

8. The party's basis for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and

9. Any other pertinent information necessary to establish the elements of each asserted privilege.[30]

If a party fails to carry its burden of establishing that documents withheld are subject to privilege, the court may conclude that the privilege is waived.[31] Any such assertion of privilege by Pacific and/or Waterfall must be made by **October 11, 2017**, by production of the description/log to both plaintiff and the court (via e-mail to the undersigned's chambers).

---

[30]*In re Syngenta*, 2017 WL 1106257, at *4; *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 448-49 (D. Kan. 2009) (citing cases).

[31]*See New Jersey*, 258 F.R.D. at 448; *Kannaday v. Ball*, 292 F.R.D. 640, 646 (D. Kan. 2013) ("It is well settled that if a party fails to make the required showing under Fed. R. Civ. P. 26(b)(5)(A) by not producing a privilege log or by producing an inadequate one, courts may deem the privilege waived.").

By that same date, any party asserting the privilege must submit the document(s) being withheld to the undersigned for *in camera* review (as an attachment to an e-mail). The court urges defendants to be judicious in making privilege assertions, and directs them to the detailed discussion of what is—and is not—protected by the attorney-client privilege set out in *In re Syngenta*.[32] It is often the case that a document may be produced with only a small portion of it redacted on privilege grounds.

Third, any party that wishes to address whether Pacific and/or Waterfall waived the attorney-client privilege over the responsive, withheld e-mails may file a supplemental brief on the issue by **October 18, 2017.**[33] The supplemental brief must be limited to five, double-spaced pages. No responses will be permitted. The supplemental brief should address the applicability of *McNaul* and any other relevant case. It should further address the scope of the waiver (whether limited to communications regarding the settlement, or whether extending beyond that to the general subject of Hyland's representation of Pacific and Waterfall), should the court find waiver.

To be clear, the court holds today that Hyland has failed to meet his burden in moving to quash the subpoena issued by Watchous. But because the attorney-client privilege belongs

---

[32]No. 14-md-2591, 2017 WL 386835, at *4 (D. Kan. Jan. 27, 2017). Although the discussion in *In re Syngenta* is of federal, rather than Kansas, legal standards, the similarity of the standards should nevertheless make the review useful. *See Cypress Media*, 997 P.2d at 692 (discussing overlap of Kansas and Federal standards).

[33]Of course, as the court has explained many times, Waterfall may only file in this case via an attorney who has entered an appearance on its behalf. *See supra* note 5.

to Hyland's clients, the court will give Pacific and Waterfall a final opportunity to (1) assert the privilege, on their own behalf, over some or all of the responsive documents and (2) satisfy the burden of proving the applicability of the privilege, including absence of waiver.[34]

IT IS SO ORDERED.

Dated September 28, 2017, at Kansas City, Kansas.

 s/James P. O'Hara 
James P. O'Hara
U.S. Magistrate Judge

---

[34]Waterfall is warned that if it chooses to forego this opportunity, the court will deem its inaction a clear intent to waive its ability to claim privilege over the communications at issue.