IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WATCHOUS ENTERPRISES, L.L.C.,

          Plaintiff,

v.                                               Case No. 16-1432-JTM

PACIFIC NATIONAL CAPITAL, et al.,

          Defendants.

## **ORDER**

The issue before the court is whether a client waives the attorney-client privilege over communications related to a settlement agreement by asserting, in a lawsuit brought to enforce the settlement agreement, it did not authorize its attorney to settle. Because the court finds that such an assertion places the subject communications "at issue," the court finds the privilege waived as to those communications.

This issue arises from a subpoena that plaintiff Watchous Enterprises, LLC ("Watchous") served on Charles J. Hyland, former counsel for defendants Pacific National Capital ("Pacific") and Waterfall Mountain USA LLC, Waterfall Mountain LLC, and Waterfall International Holdings Limited (collectively, "Waterfall"), requesting copies of communications related to Pacific's authorization, repudiation, or ratification of a settlement allegedly reached with Watchous. Hyland filed a motion to quash the subpoena, arguing

compliance would require him to disclose privileged communications with Pacific and Waterfall **(ECF No. 60)**. On September 28, 2017, the undersigned U.S. Magistrate Judge, James P. O'Hara, entered an order holding Hyland "failed to satisfy his burdens of establishing (1) that the attorney-client privilege protects all communications responsive to the subpoena and (2) that, even assuming the privilege applies, the privilege has not been waived by both Pacific and Waterfall."[1] Nevertheless, recognizing that the attorney-client privilege belongs to the client, not the attorney, the court took Hyland's motion under advisement and set forth a process to give Pacific and Waterfall "a direct opportunity to establish the applicability of the privilege, including the absence of waiver."[2] While Waterfall remained silent on the matter, Pacific asserted privilege over most documents Hyland had identified as responsive to the subpoena, and submitted a privilege log in support of its privilege claims. Pacific further filed a brief, supplementing earlier briefs filed in support of the motion, arguing it did not waive the attorney-client privilege by placing protected communications at issue.[3] Because the court finds Pacific has failed to demonstrate the absence of waiver, the court now denies Hyland's motion to quash the subpoena.

---

[1] ECF No. 68 at 9.

[2] *Id.* at 11.

[3] ECF No. 76.

**I.    Background**

A complete summary of the facts leading to this action is set forth in the undersigned's September 28, 2017 order, but facts directly relevant to the instant privilege question are discussed here.

Watchous filed its complaint against Pacific and Waterfall in December 2016, and shortly thereafter Hyland entered his appearance as counsel for both defendants. On April 7, 2017, the parties filed a joint motion to stay the case (which the court granted), representing that the parties had reached an oral settlement and that full performance of the settlement would occur by June 21, 2017.[4] Under the settlement, one or more of the defendants agreed to pay $175,000 to Watchous in three installments. When no payment was made on the first installment date, Watchous moved the court to lift the stay.[5] The court granted the motion, and Watchous amended its complaint to add, among other things, a claim against Pacific and Waterfall for breach of the settlement agreement.

In June 2017, Hyland withdrew from representing Waterfall and Pacific. Pacific retained new counsel and, jointly with newly added defendants Charles A. Elfsten and Mark

---

[4]ECF No. 22.

[5]ECF No. 24.

M. Hasegawa,⁶ filed an answer to the amended complaint in which Pacific denied being a party to the settlement agreement.⁷ Specifically, Pacific pled:

> Pacific National Capital did not give Charles Hyland express authorization or implied consent to settle with Plaintiff on the terms as alleged by Plaintiff in its First Amended Complaint. Therefore, Mr. Hyland lacked actual authority to bind Pacific National Capital to the terms of the alleged settlement agreement with Plaintiff.⁸

Thereafter, Watchous served the subpoena at issue on Hyland. The subpoena requested:

> Copies of any and all documents or communications: 1) expressly or impliedly granting you authority to extend the offer conveyed by your email of April 3, 2017, to settle the litigation; 2) allowing any person or defendant to direct the litigation, or settlement of the litigation, on behalf of Pacific National Capital; 3) showing when Pacific National Capital was notified of the settlement; 4) showing that Pacific National Capital ratified the settlement; 5) showing that Pacific National Capital repudiated the settlement, claimed that you entered into without authorization, or objected to the terms of the offer or settlement; 6) showing that Pacific National Capital authorized you to stay the captioned litigation after the settlement was reached.⁹

Rather than responding, Hyland filed the motion to quash the subpoena, arguing that responsive documents are protected by the attorney-client privilege.

---

⁶Elfsten and Hasegawa are the president and senior vice president, respectively, of Pacific.

⁷ECF No. 56 at 6.

⁸*Id.* at 19.

⁹ECF No. 58 at 5.

Following the process set forth in the court's September 28, 2017 order, Hyland produced copies of the responsive documents—all of them e-mails—to Pacific and Waterfall. On October 11, 2017, Pacific served a privilege log, asserting attorney-client privilege over 46 separate e-mails,[10] and submitted the e-mails to the court for in camera review. Waterfall, on the other hand, did not assert privilege over the documents, despite the court's warning that its failure to so do would be deemed "a clear intent to waive its ability to claim privilege over the communications at issue."[11] The court now addresses whether Pacific satisfied its burden of proving the applicability of the attorney-client privilege to the documents, including the absence of waiver.[12]

## II. Legal Standards

As the court's earlier order set forth, Kansas law governs the applicability of the attorney-client privilege in this diversity case.[13] Under Kansas law, the essential elements of the attorney-client privilege are:

> (1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) the communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently

---

[10] Although there are 105 entries on the log, 59 of the e-mails logged are duplicative, e.g., parts of e-mail strings.

[11] ECF No. 68 at 14 n.34.

[12] The court hereby grants Pacific's motion for leave to file a reply to Watchous's supplemental brief (ECF No. 78) and considers Pacific's reply in its analysis.

[13] *See* ECF No. 68 at 4–9.

protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless privilege is waived.[14]

A person seeking to assert the attorney-client privilege as a bar to discovery has the burden of establishing that it applies.[15] A claim of privilege fails upon a failure of proof as to any element.

Because absence of waiver is an element, the burden of proving the privilege has not been waived remains with the person asserting the privilege.[16] The court's September 28, 2017 order recognized the presence of the joint-client doctrine in Kansas, which holds that when "two or more persons employ an attorney as their common attorney, their communications to him in the presence of each other are regarded as confidential" and do not waive the attorney-client privilege.[17] The court noted, however, that the attorney-client privilege would nevertheless be deemed waived if each of the joint clients otherwise waived the privilege.[18]

---

[14] *Rowan v. Sunflower Elec. Power Corp.*, 2016 WL 3745680, No. 15-9227, at *3 (D. Kan. Jul 13, 2016) (citations omitted); *see also ERA Franchise Sys., Inc. v. N. Ins. Co.*, 183 F.R.D. 276, 278 (D. Kan. 1998) (citations omitted); *Cypress Media, Inc. v. City of Overland Park*, 997 P.2d 681, 689 (Kan. 2000) (quoting *State v. Maxwell*, 691 P.2d 1316 (Kan. Ct. App. 1984)).

[15] *Harlow v. Sprint Nextel Corp.*, No. 08-2222, 2012 WL 646003, at *5 (D. Kan. Feb. 28, 2012) (citing *Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540, 542 (10th Cir. 1984)); *Johnson v. Gmeinder*, 191 F.R.D. 638, 642 (D. Kan. 2000) (applying Kansas law).

[16] *Johnson*, 191 F.R.D. at 642-43 (applying Kansas law); *Maxwell*, 691 P.2d at 1319.

[17] ECF No. 68 at 7 (quoting *Maxwell*, 691 P.2d at 1320).

[18] *Id.* at 8.

Waiver may be implicit, as well as explicit. An implied waiver "may be founded on delay or inaction in asserting a known right."[19] For example, in *S.E.C. v. McNaul*, the court held former clients implicitly waived the attorney-client privilege when they asserted only blanket objections to a subpoena, "without specifically showing why they claimed any of the documents were privileged," and then failed to respond to a show-cause order directing them to show why their motion to quash should not be denied.[20]

An implied waiver may also be found when a party puts the fact of privileged communication "at issue."[21] "[W]hen a party puts a privileged matter in issue as evidence in a case, it . . . waives the privilege as to all related privileged matters on the same subject."[22] A party may not raise communications with counsel as a defense, "yet claim privilege to foreclose discovery on whether or not it is true. This would be an abuse of the attorney-client privilege by improperly using it as a sword and shield."[23]

---

[19]*S.E.C. v. McNaul*, 277 F.R.D. 439, 443 (D. Kan. 2011) (applying Kansas law on waiver).

[20]*Id.*

[21]*Id.*; *State ex rel. Stovall v. Meneley*, 22 P.3d 124, 142 (Kan. 2001); *Matter of Adoption of A.S.S.*, 907 P.2d 913, 917 (Kan. App. 1995).

[22]*McNaul*, 277 F.R.D. at 444 (quoting 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2016.6 (3d ed. 2010)).

[23]*Id.*

**III. Analysis**

Applying the above legal standards, the court finds that any attorney-client privilege which may have existed[24] to protect the e-mails identified by Hyland as responsive to Watchous's subpoena has been waived, separately, by both of his former clients Waterfall and Pacific.

First, the court easily concludes Waterfall implicitly waived the privilege in failing to assert it in the face of the instant dispute. Waterfall's inaction in this case since Hyland withdrew as counsel was set out in the undersigned's September 28, 2017 order and again in the memorandum and order recently issued by U.S. District Judge J. Thomas Marten, directing the entry of default against Waterfall.[25] Despite its knowledge of the subpoena that Watchous served on its former counsel, requesting communications to which Waterfall was a party, Waterfall has remained silent and has not asserted privilege over the communications. The undersigned's last order specifically noted it was giving Waterfall "a final opportunity" to assert privilege over the documents, and warned Waterfall "that if it chooses to forego this opportunity, the court will deem its inaction a clear intent to waive its ability to claim privilege over the communications at issue."[26] Waterfall has not asserted

---

[24]As noted below, determining whether the attorney-client privilege applied to each withheld document in the first place would be an academic exercise.

[25]ECF No. 72.

[26]ECF No. 68 at 14 n. 34.

privilege over the responsive documents, and the court now deems waived any privilege owing Waterfall that might have existed.[27]

Second, Pacific has failed to convince the court it did not waive the privilege by placing the communications "at issue" in its answer to the amended complaint. The court finds this case materially indistinguishable from *McNaul* and *Matter of Adoption of A.S.S.* In *McNaul*, the court held that former clients who argued they should not be assessed civil penalties because they had acted upon the advice of counsel, had thereby implicitly waived the attorney-client privilege as to communications on the subject by placing "in issue" the advice received.[28] The court reasoned that allowing a party to assert communications with counsel as a defense, but then foreclosing discovery on whether or not the assertion is true, would "be an abuse of the attorney-client privilege."[29]

Similarly, in *Matter of Adoption of A.S.S.*, the Kansas Court of Appeals upheld a district court ruling that a client waived privilege over communications with counsel regarding the date of a court hearing when the client asserted in a motion that she had not received notice of the hearing.[30] The court held the client had waived the privilege "by

---

[27]*See McNaul*, 277 F.R.D. at 443 ("[W]aiver of privilege may be founded on delay or inaction in asserting a known right.").

[28]*Id.* at 444.

[29]*Id.*

[30]907 P.2d at 917.

placing the notice issue before the court."[31] The attorney could therefore testify that she notified her client of the hearing without violating the attorney-client privilege.

Like the clients in *McNaul* and *Matter of Adoption of A.S.S.*, Pacific has placed its communications with Hyland at issue before the court. Pacific's primary (if not only) defense to Watchous's breach-of-settlement-agreement claim is that it "did not give Charles Hyland express authorization or implied consent to settle with Plaintiff on the terms as alleged by Plaintiff in its First Amended Complaint."[32] Thus, what Pacific and Hyland discussed regarding the settlement and settlement negotiations is directly at issue; in Pacific's parlance, such communications are "integral" to Pacific's defense.[33] Because Pacific injected the defense that Hyland did not have the authority needed to bind it to the settlement, Pacific has waived the attorney-client privilege on the issue.[34]

---

[31]*Id.*

[32]ECF No. 56 at 19.

[33]ECF No. 76 at 5 (quoting *Progressive Nw. Ins. Co. v. Grant*, No. 15-9267, 2017 WL 656676, at *6 (D. Kan. Feb. 16, 2017) (applying federal, rather than Kansas, law)).

[34]*See McNaul*, 277 F.R.D. at 444; *Matter of Adoption of A.S.S.*, 907 P.2d at 917. *See also Roberts v. Legacy Meridian Park Hosp., Inc.*, 97 F. Supp. 3d 1245, 1255 (D. Or. 2015) ("Plaintiffs . . . thereby injected the defense that [attorney] did not have the actual authority needed to bind Plaintiffs to a settlement. Thus, Plaintiffs placed "at issue" whether [attorney] had actual authority from his clients to extend the settlement offers that he made. Moreover, the only way for Defendants to be able fairly to refute—or confirm—[Plaintiff's] assertion is to inquire into otherwise privileged communications."); *Rubel v. Lowe's Home Ctrs., Inc.*, 580 F. Supp. 2d 626, 628-29 (N.D. Ohio 2008) ("[Plaintiff] testified in his sworn affidavit and deposition that he never authorized [former attorney] to accept a settlement on his behalf. Plaintiff's testimony impliedly waived his attorney-client privilege as to any subject to which he testified and pertinent to his claim, namely settlement authority.").

The court flatly rejects Pacific's assertion in its supplemental brief that its answer "does not reference" communications with Hyland.[35] Although, obviously, Pacific's answer does not disclose the specific words exchanged with its attorney about the settlement, it would be unfair to allow Pacific to assert its communications (or lack thereof) with Hyland as a defense to liability on the breach-of-settlement claim, but then to foreclose Watchous from discovery needed to test that assertion.[36] Caselaw instructs that the attorney-client privilege may not be used in this manner as both a sword and a shield. Additionally, Pacific states that its principals can testify "that they were aware of a settlement with the plaintiff and that only the Waterfall defendants were paying the settlement sum,"[37] but such testimony would not address Pacific's asserted defense that it did not authorize Hyland to enter the settlement agreement on Pacific's behalf.[38] And perhaps more importantly, Watchous should not be limited to after-the-fact testimony of its adversaries when real-time, direct

---

[35] ECF No. 76 at 2.

[36] See *Rubel*, 580 F. Supp. 2d at 628 ("It is irrelevant that [plaintiff's] testimony [that he did not authorize his former attorney to settle] did not specifically refer to any conversations with his former attorney."). The court rejects Pacific's argument that its answer only disclosed an unprotected "fact," and thereby did not waive privilege; as discussed above, the answer placed communications at issue.

[37] ECF No. 76 at 5.

[38] Likewise, Pacific's argument that "information about Pacific's and Waterfall's understandings of the settlement terms is available from fact witnesses," does not address Pacific's defense that it did not authorize Hyland to enter the settlement agreement.

documentary evidence is available to shed light on Pacific's asserted denial of providing settlement authority.

By placing its communications with Hyland at issue, Pacific has waived the attorney-client privilege as to communications on the subject of Hyland's authority to reach an agreement with Watchous on behalf of Pacific.

The parties raise a number of tangential arguments in their briefs. But because neither Hyland nor his former clients have demonstrated the "absence of waiver" element of the attorney-client privilege, the court need not proceed to examine whether the other seven elements of privilege have been established, nor whether Pacific's allegedly inadequate privilege log also waived the privilege, nor whether a statutory exception[39] to the attorney-client privilege exists.

IT IS THEREFORE ORDERED that Hyland's motion to quash the subpoena on privilege grounds is denied.

Dated October 24, 2017, at Kansas City, Kansas.

s/James P. O'Hara  
James P. O'Hara  
U.S. Magistrate Judge

---

[39]*See* K.S.A. 60-426(b).