IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**WATCHOUS ENTERPRISES, LLC,**

    **Plaintiff,**

v.                                                  Case No. 16-1432-DDC

**PACIFIC NATIONAL CAPITAL,** *et al.***,**

    **Defendants.**

## MEMORANDUM AND ORDER

This matter comes before the court on plaintiff's Amended Motion for Substitution (Doc. 381). Defendants could've filed a brief opposing plaintiff's request, but they didn't. On June 2, 2021, the court conducted a hearing on the matter, as required under Fed. R. Civ. P. 25(a)(3). *See* Doc. 398. All of the parties appeared remotely via video teleconferencing technology. *See id.* As with plaintiff's counsel, the pro se defendants received an opportunity to be heard.[1] *See id.* Kendra Duval also appeared pro se. *See id.* Mrs. Duval is relevant here because the pending motion asks the court to substitute Mrs. Duval, who is the "personal representative of the Estate of Gordon W. Duval, deceased, as a defendant in this action in place of Gordon W. Duval

---

[1] Each of the individual defendants in this case—Charles Elfsten, Mark Hasegawa, William Mournes, and Mark Zouvas—appear pro se. *See* Doc. 398. The corporate defendants—Pacific National Capital, Waterfall Mountain LLC, Waterfall Mountain USA LLC, and Waterfall International Holdings Ltd.—haven't retained counsel to represent them. *See id.* The defendants know by now that the corporate defendants may not proceed pro se, neither at trial nor during pretrial proceedings. *See, e.g.*, Doc. 388 at 1 ("With this Order, the court gives the corporate defendants a final warning: They may not appear in federal court without legal representation through counsel who are admitted to practice before our court.").

because of his death."[2]  Doc. 381 at 1.  Now, the court is ready to rule plaintiff's motion.  For the reasons explained below, plaintiff's Amended Motion for Substitution (Doc. 381) is granted.

**I.     Background**

Plaintiff initiated this lawsuit in December 2016.  *See* Doc. 1 (Compl.).  Finally, the matter is set for trial in Wichita beginning June 28, 2021.  *See* Doc. 385 (Second Am. Trial Order).  To condense a long story, plaintiff alleges that defendants—both as individuals and through the named corporate entities—duped it into paying more than $100,000 to secure a business relationship with defendants.  *See generally* Doc. 168 (Second Am. Compl.).  The purported joint venture was focused on oil and gas exploration, and defendants allegedly promised plaintiff—more than once—a return of its initial payment upon completion of the planned partnership.  *See, e.g.*, *id.* at 7 (Second Am. Compl. ¶ 33) (quoting language from a letter of intent signed by the parties stating plaintiff "shall make a refundable deposit of One Hundred Seventy-Five Thousand Dollars" which "shall be refunded upon the earlier of the Closing or the earlier termination of this LOI").

Plaintiff claims that every "promise that the Deposit would be refunded went unfulfilled." *Id.* at 9 (Second Am. Compl. ¶ 41); *see also id.* (Second Am. Compl. ¶ 43) ("Waterfall has refused and failed to refund the Deposit despite repeated demands by Watchous.").  According to plaintiff, defendants never delivered on their promises for the partnership overall or even had the ability to do so.  *See, e.g.*, *id.* (Second Am. Compl. ¶ 44) ("Upon further investigation into Mournes, Duval, and Zouvas, it became apparent that neither Pacific nor any other defendant informed Watchous that Mournes had significant debt and Waterfall did not have the ability to enter into the transaction.").  "On or about September 1, 2016, Watchous terminated the LOI."

---

[2]     Plaintiff's Second Amended Complaint names Gordon W. Duval as one of several individual defendants in this lawsuit.  *See* Doc. 168 at 1 (Second Am. Compl.).  Mr. Duval passed away in January 2021.  *See* Doc. 379 at 1.

*Id.* (Second Am. Compl. ¶ 42).  Three months later, plaintiff filed its Original Complaint.  *See generally* Doc. 1 (Compl.).

There's more to this story.  But these details are all that's needed to set the stage for plaintiff's pending Amended Motion for Substitution (Doc. 381).  Below, the court explains the governing legal standards.  After that, the court analyzes and rules plaintiff's motion.

## II.     Legal Standard

### A.     Fed. R. Civ. P. 25

The Federal Rules of Civil Procedure anticipate situations like the present one, where a lawsuit's lifespan is longer than an individual's.  *See* Fed. R. Civ. P. 25.  Rule 25 of the Federal Rules of Civil Procedure provides that if "a party dies and the claim is not extinguished, the court may order substitution of the proper party."  Fed. R. Civ. P. 25(a)(1).  As is the case here, a "motion for substitution may be made by any party" and it must be made "within 90 days after service of a statement noting the death[.]"  *Id.*  Otherwise, "the action by or against the decedent must be dismissed."  *Id.*

Here, plaintiff filed a notice of Mr. Duval's death on May 3, 2021.  *See* Doc. 379.  Then, on May 11, 2021, plaintiff filed its present motion.  *See* Doc. 381.  Thus, plaintiff's Amended Motion for Substitution was filed "within 90 days after service of a statement noting the death[.]"  Fed. R. Civ. P. 25(a)(1).  And the docket in this case reflects that a "motion to substitute, together with a notice of hearing, [was] served on the parties[.]"  Fed. R. Civ. P. 25(a)(3); *see also* Doc. 386 (Certificate of Service).

### B.     Kansas State Law

Plaintiff's pending motion calls upon Kansas state law.  *See* Doc. 381 at 1 (citing Kan. Stat. Ann. § 60-1801).  Specifically, according to plaintiff, Kansas state law applies to its claim

3

against Mr. Duval for fraud. *Id.* at 1. Kansas law applies to this claim because a federal court exercising supplemental jurisdiction over state law claims in a federal question case applies the substantive law, including choice of law rules, of the forum state. *BancOklahoma Mortg. Corp. v. Cap. Title Co., Inc.*, 194 F.3d 1089, 1103 (10th Cir. 1999) (citations omitted). And in any event, defendants filed no brief opposing plaintiff's argument that Kansas state law governs the question whether an allegation of fraud is one that survives the death of the person against whom it's alleged. *See* D. Kan. Rule 7.4(b) (referencing the time requirements for submitting responsive briefs and explaining that an unopposed motion typically will be granted "without further notice"). So, the court applies Kansas law to this question.

By statute, Kansas recognizes a short list of legal claims whose viability remains "notwithstanding the death of the person entitled to or liable to the same." Kan. Stat. Ann. § 60-1801. The menu includes "any deceit or fraud," which is precisely what plaintiff asserts against Mr. Duval in this lawsuit. *Id.*; *see also* Doc. 381 at 1 (asserting that plaintiff's "claim for fraud" against Mr. Duval "survive[s] Gordon Duval's death").

### III.   Analysis

#### A.   Plaintiff's Fraud Claim

Kansas law is clear, and plaintiff is right. Five simple steps produce the conclusion that plaintiff's claim for fraud against Gordon Duval survives in this lawsuit despite Mr. Duval's passing. *First*, Fed. R. Civ. P. 25(a)(1) expressly contemplates the possibility that a litigant may pass away but a "claim is not extinguished," in which case "the court may order substitution of the proper party." *Second*, Kan. Stat. Ann. § 60-1801 specifies that a claim alleging fraud isn't extinguished in the same scenario envisioned under Fed. R. Civ. P. 25(a)(1). So, *third*, and again under Rule 25, plaintiff had "90 days after service of a statement noting the death" of a litigant to

4

take action, lest "the decedent . . . be dismissed." Fed. R. Civ. P. 25(a)(1). *Fourth*, plaintiff met that deadline by wide margins. *See* Docs. 379, 381. *Fifth* and finally, plaintiff has identified a proper party for these purposes because Mrs. Duval is the "personal representative of the Estate of Gordon W. Duval, deceased[.]" Doc. 381 at 1; *see also id.* at 4 (Ex. A) (providing a copy of a court order from a Utah state court declaring "Kendra Duval was duly appointed and qualified as Personal Representative of the estate of [Gordon W. Duval] by the Court with all authority pertaining thereto").

Defendants failed to respond and object to plaintiff's motion, so plaintiff's request is unopposed. Our district's local rules direct that unopposed motions "[o]rdinarily" will be granted "without further notice." D. Kan. Rule 7.4(b). But the court agrees with plaintiff for more reasons than a mere technicality. Plaintiff's argument has solid legal grounding. And defendants haven't refuted it.

Defendants may not have responded in writing, but two of them spoke up at the motion hearing on this matter. Mr. Mournes requested the court deny plaintiff's motion because, he said, Mrs. Duval has no connection to this lawsuit beyond her prior marriage to Mr. Duval. Mr. Mournes further decried the economic hardship that might befall Mrs. Duval in the event of a judgment at trial in plaintiff's favor. Mrs. Duval also addressed the court at the hearing, and she expressed similar concerns. Although the court sympathizes with her situation, Mrs. Duval's observations, as well as Mr. Mournes's, are of no bearing to the legal outcome that's required under the facts presented. Rather, their worries reflect downstream concerns that may or may not actually arrive, and which furnish no reason to deny plaintiff's motion. Thus, plaintiff prevails on this point.

### B. Plaintiff's RICO Claim

Plaintiff's motion also points the court to its claim for civil liability under the Racketeer Influenced and Corrupt Organizations Act (RICO).  *See* Doc. 381 at 1.  Here again, plaintiff's argument is unopposed.  *See* D. Kan. Rule 7.4(b).  Likewise, defendants' commentary at the motion hearing addressed the totality of plaintiff's assertions, so the court takes their remarks under advisement in this context, too.  But again, plaintiff carries the day.

Plaintiff's counsel explained at the hearing that his legal research revealed no controlling case law from the Tenth Circuit on the question whether a RICO claim survives the death of a litigant.  The court's own research produced the same conclusion.  But other courts that have addressed the topic have spoken clearly.  *See Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016) ("[W]e follow the Supreme Court's guidance that RICO's remedial purpose predominates and hold that a claim under the statute survives the victim's death."); *see also Faircloth v. Finesod*, 938 F.2d 513, 518 (4th Cir. 1991) ("Construing it liberally, as Congress directed, we think that civil RICO claims should survive."); *First Am. Corp. v. Al-Nahyan*, 948 F. Supp. 1107, 1122 (D.D.C. 1996) ("[T]he Court is persuaded that a civil RICO suit survives the death of a defendant.").

This court agrees with the authority plaintiff provided.  And on top of that, defendants failed to oppose plaintiff's motion.  Given that plaintiff has identified persuasive legal authority and defendants failed to refute it, plaintiff prevails on its motion.

## IV. Conclusion

In sum, plaintiff has identified either controlling or persuasive legal authority for its arguments that claims based on fraud and RICO survive a defendant's death.  Defendants failed

to refute these assertions with any legal arguments of their own.  Thus, the court grants plaintiff's unopposed Amended Motion for Substitution (Doc. 381).

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Amended Motion for Substitution (Doc. 381) is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** the Clerk of Court is directed to substitute Kendra Duval as defendant in this action in the place of Gordon Duval.

**IT IS SO ORDERED.**

Dated this 7th day of June, 2021, at Kansas City, Kansas.

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**
