IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WATCHOUS ENTERPRISES, LLC,

Plaintiff,

v.                                                    Case No. 16-1432-DDC

PACIFIC NATIONAL CAPITAL, *et al.*,

Defendants.

MEMORANDUM AND ORDER

This Order arises primarily from plaintiff Watchous Enterprises, L.L.C.'s Motion

Concerning Form of Judgment (Doc. 445).  The Order also addresses the Supplemental

Response to Motion Concerning Form of Judgment (Doc. 447) filed by defendant Mark Zouvas,

which the court liberally construes as a motion for reconsideration.[1]  For reasons explained

below, the court grants plaintiff's motion in part and denies it in part.  Defendant Mark Zouvas's

requested relief—communicated in his Supplemental Response—is denied.

I.      **Analysis**

        A.      **Default Judgment Against Pacific National Capital**

        The court first considers plaintiff's request for entry of default against defendant Pacific

National Capital on plaintiff's fraud claim under Kansas common law.  As background, this case

involves several corporate defendants and a handful of individual defendants—each of them

related to those corporate outfits.  Here, plaintiff has requested entry of default against only

---

[1]      Because Mr. Zouvas proceeds pro se in this case, the court construes his filings liberally.  The
same is true for all of the individual defendants, each of them proceeding pro se.  *See Hall v. Bellmon*,
935 F.2d 1106, 1110 (10th Cir. 1991).  On this approach, Mr. Zouvas's Supplemental Response (Doc.
447)—despite some irregularities—resembles a motion for reconsideration.  The court explains all of this
in more detail in later sections of this Order.

Pacific.  That's because the court already has held the entities associated with the Waterfall brand in default.  *See* Doc. 82 at 1.

This issue arises—both for Waterfall previously and now for Pacific—because these corporate entities persistently have proceeded in this case without legal counsel.  That's a problem.  *See, e.g.*, *Boilermaker-Blacksmith Nat'l Pension Fund v. Tank Maint. & Tech., Inc.*, No. 96-2161-JWL, 1997 WL 458411, at *1 (D. Kan. July 18, 1997) ("The general rule is that a corporation can appear in court only by an attorney." (collecting cases)).  For years, in this case, the court has admonished the corporate defendants to secure counsel or risk the consequences. *See, e.g.*, Doc. 399 at 1 n.1 ("The defendants know by now that the corporate defendants may not proceed pro se, neither at trial nor during pretrial proceedings." (citation omitted)).  The court reminded these pro se corporate defendants in May 2021, for instance, that each "must secure legal counsel and notify the court at the soonest possible opportunity—and no later than three weeks before the trial date in this case . . . or suffer the consequences of their failure to oblige multiple warnings from the court."  Doc. 388 at 3.  But the trial date came and passed, and none of these defendants ever appeared through legal counsel.

Now, plaintiff asks the court to hold Pacific accountable for its failure to secure counsel. None of the defendants marshaled a response to this argument.  This reason alone could justify the court's decision to hold Pacific in default.  *See* D. Kan. Rule 7.4(b) (explaining that the court typically will grant unopposed motions "without further notice").  But plaintiff also is right on the merits.

"As a general matter, a corporation or other business entity can only appear in court through an attorney and not through a non-attorney corporate officer appearing pro se." *Harrison v. Wahatoyas, L.L.C.*, 253 F.3d 552, 557–58 (10th Cir. 2001) (citation omitted).  This

rule dates back nearly two centuries. *Osborn v. Bank of U.S.*, 22 U.S. 738, 830 (1824) (Marshall,

C.J.) ("A corporation, it is true, can appear only by attorney, while a natural person may appear

for himself."). "Dodging that obligation opens a corporation to the possibility of default."

*Zimmerling v. Affinity Fin. Corp*, 478 F. App'x 505, 508 (10th Cir. 2012) (citation omitted). Our

Circuit has affirmed default judgments against corporate entities whose failures in litigation stem

from a "deliberate decision not to retain counsel." *Id.* (explaining that pro se corporate

defendant's "lack of notice regarding the default judgment was not due to excusable neglect but

to its deliberate decision not to retain counsel"); *see also id.* (rejecting defendant's argument to

the contrary because this assertion "overlook[ed] the deliberateness of [defendant's] predicate

act:  its failure to retain counsel despite adequate warnings of the consequences of doing so").

Rule 55 of the Federal Rules of Civil Procedure governs default judgments. Fed. R. Civ.

P. 55.  Rule 55(a) explains that default may be entered against a party who "has failed to plead or

otherwise defend" an action. Fed. R. Civ. P. 55(a). Rule 55(b)(2) overviews default judgments

entered by courts. Fed. R. Civ. P. 55(b)(2). This subsection explains that courts may enter

default, and, if the party subject to default has appeared in the case, it must receive notice. *Id.*

Here, Pacific has received notice via plaintiff's motion.[2] *See* Doc. 445 at 19 (providing a

Certificate of Service asserting that plaintiff served the motion via U.S. mail and electronic mail

to Pacific).  And, the court doesn't need to conduct a hearing on the matter, although Rule 55

permits it. *See id.*  Regardless, "[t]his is not a typical default judgment[.]" *Ringgold Corp. v.

Worrall*, 880 F.2d 1138, 1141 (9th Cir. 1989).

Here, the situation is analogous to *Ringgold*, where the Ninth Circuit affirmed default

against defendants who repeatedly disregarded directions from the district court about pertinent

---

[2]     Defendants also are on notice because plaintiff raised this point at the beginning of the trial in this case.

details of their lawsuit, particularly an approaching trial date. *See id.* This case is also similar to *Brock*: "In this context, a trial judge, responsible for the orderly and expeditious conduct of litigation, must have broad latitude to impose the sanction of default for non-attendance occurring after a trial has begun." *Brock v. Unique Racquetball and Health Clubs, Inc.*, 786 F.2d 61, 64 (2d Cir. 1986). The trial court held *Brock*'s defendants in default because they failed to appear at trial. *See id.* And, the Second Circuit found "entry of default was . . . appropriate." *Id.*

So, for many reasons and with a broad span of support from our Circuit and others, the court is authorized to hold Pacific in default. Plaintiff's arguments are directly on point. *See* Doc. 445 at 3–4. None of the defendants have argued in response to plaintiff's points or authorities. *See* D. Kan. Rule 7.4(b). And the court agrees that common sense and centuries-old precedent support plaintiff's argument: "entry of default as to Watchous's claims for fraud is in order." Doc. 445 at 4. The court thus grants this aspect of plaintiff's motion and holds defendant Pacific National Capital in default.

### B.  Appropriate Damages

Next, the court reviews plaintiff's arguments about an appropriate measure of damages against the defendants. The jury in this case agreed with plaintiff on all of its claims and returned verdicts against every individual defendant for:

> **(1)** civil liability under the RICO statute, 18 U.S.C. § 1962(c),
> **(2)** civil RICO conspiracy liability under 18 U.S.C. § 1962(d),
> **(3)** damages due to defendants' fraud under Kansas common law,
> **(4)** civil conspiracy to commit fraud under Kansas common law, and
> **(5)** punitive damages under Kansas state law.

*See* Doc. 442 at 1–15. Here's the issue: a question exists whether any of these damages awards overlap in a way that's in tension with the ages-old premise that litigants may not doubly recover damages. *See, e.g.*, *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) ("As we have noted,

it goes without saying that the courts can and should preclude double recovery by an individual." (internal quotation marks and citation omitted)).  In the court's view, it can resolve this issue later when it considers any materials prepared by plaintiff addressing the issue of attorneys' fees. Below, the court addresses each form of damages that plaintiff should receive.  Then, the court explains how plaintiff can avoid a double-recovery issue when it provides billing records for its attorneys' fees request.

### 1.   Treble Compensatory Damages, Attorneys' Fees, and Costs Under RICO

Civil RICO liability carries severe penalties.  And a jury found that every defendant in this case violated the RICO statute in two ways:  (1) through a direct violation, and (2) through a civil conspiracy to violate RICO.  Here's what these verdicts mean for plaintiff's damages request.

*First*, the statute's plain language drafts a clear roadmap for this court.  Under the civil RICO statue:  "Any person injured in his business or property by reason of a violation of section 1962 of this chapter . . . *shall* recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee[.]"  18 U.S.C. § 1964(c) (emphasis added).  "[T]he traditional rule [is] that the first step in our exposition of a statute always is to look to the statute's text and to stop there if the text fully reveals its meaning."  *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 526 (1990) (Rehnquist, C.J., dissenting) (citing *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) ("[O]ur starting point must be the language employed by Congress, and we assume that the legislative purpose is expressed by the ordinary meaning of the words used." (internal quotation marks and citations omitted))).

Here, the court will stop at step one because the statute's "text fully reveals its meaning." *Id.*  Under the civil RICO statute, plaintiff "shall recover threefold the damages he sustains and

the cost of the suit, including a reasonable attorney's fee[.]"  18 U.S.C. § 1964(c).  This damages

award is mandatory.  *See, e.g.*, *Genty v. Resol. Tr. Corp.*, 937 F.2d 899, 914 (3d Cir. 1991)

(observing that RICO's "plain language . . . instructs that injured persons 'shall recover' treble

damages and costs and attorneys fees" and remarking that this statutory language connotes a

mandatory provision (quoting 18 U.S.C. § 1964(c))).  The court thus grants plaintiff's motion on

this question because the civil RICO statute mandates treble compensatory damages, attorneys'

fees, and costs.

### 2.  Punitive Damages Under Kansas Common Law

The court now considers plaintiff's argument that RICO damages don't affect its

recovery of punitive damages under Kansas common law.  Before the trial in this case, the court

already held on motions for summary judgment that the individual defendants are liable for fraud

under Kansas common law.  *See* Doc. 335 at 91.  At trial, the jury was asked to decide three

related questions:  (1) whether plaintiff sustained damages based on the fraud, (2) whether

defendants conspired to commit fraud, and (3) if a civil fraud conspiracy existed, whether

plaintiff sustained damages as a result.  *See, e.g.*, Doc. 442 at 1–3 (providing the Verdict Form

completed by the jury).  For each of these questions and against every individual defendant, the

jury returned the same answer:  Yes.  *See id.* at 1–15.  Last, the jury was asked to answer one

additional question:  whether, based on their finding of fraud, punitive damages were warranted.

*See, e.g.*, *id.* at 3 (providing an example of the relevant question to jurors via the Verdict Form

for each individual defendant).  The jury replied in the affirmative.  *See id.*  This section of the

court's Order considers the issue of punitive damages, as decided by the jury's verdict.

Plaintiff and defendants spotlight separate issues in this area.  As explained below, defendants' arguments are misguided.  Plaintiff is correct.  And, the court spots an additional issue that merits discussion.

Starting with defendants, they argue that civil RICO liability shares a punitive dynamic that's analogous to plaintiff's claim for punitive damages under Kansas common law.  *See* Doc. 446 at 1–4.  Specifically, they argue, "the punitive nature of treble RICO damages" means the court should "deny the imposition of punitive damages in a case, like this one, where treble RICO damages are imposed for the same conduct."  *Id.* at 1.  Defendants urge the court to "strike all punitive damages against them or, at a minimum," reduce the punitive damages award to equal the compensatory damages award.  *Id.* at 12.  This argument is misguided for at least two reasons.

*First*, the Supreme Court has spoken unequivocally about RICO's treble damages provision in a way that forecloses defendants' argument.  *See PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 406 (2003) ("Indeed, we have repeatedly acknowledged that the treble-damages provision contained in RICO itself is remedial in nature.").  Thus, RICO's treble damages provision isn't punitive—it's remedial.  *See id.*  *Second*, the civil RICO claim and state law fraud claims are not identical.  Although the facts of this case necessarily involve overlapping details, the charges and individual elements aren't identical.  Thus, awarding damages for unlawful racketeering activity, under RICO, and for fraudulent conduct, under Kansas common law, doesn't entail a duplicative damages award.  *Cf. Mason v. Okla. Turnpike Auth.*, 115 F.3d 1442, 1460 (10th Cir. 1997) ("In some cases, multiple punitive damage awards on overlapping theories of recovery may not be duplicative at all, but may instead represent the

jury's proper effort to punish and deter *all* the improper conduct underlying the verdict." (citation omitted)).[3]  In sum, none of defendants' arguments are persuasive.

Defendants argue separately that the court should eliminate the jury's punitive damages award, or at least reduce it to equal the compensatory damages in this case.  Doc. 446 at 4. These arguments rely on an analogy to another case from our court, *Ross v. Jenkins*.  *See id.* at 3 (citing *Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1110 (D. Kan. 2018)).  But all of these arguments are incorrect.

*First*, defendants cite *Ross* for the premise that the court should reduce the jury's punitive damages award.  *Id.*  But this analogy is misplaced.  In *Ross*, the damages award was decided by the court—not a jury.  *See Ross*, 325 F. Supp. 3d at 1153.  There's no meaningful comparison between these cases because their differences are fundamental.  *Second*, defendants raise an incorrect argument that just like "in *Ross*, those [compensatory] damages should set the upper limits of punitive recovery."  Doc. 446 at 4.  Here, defendants are right but not in the way they likely intended.  The "upper limit" for punitive damages does depend on the amount of compensatory damages.  But it doesn't depend on the court's unrelated conclusions in *Ross*. Instead, the Supreme Court has set the outer-most limits for punitive damages awards relative to compensatory damages awards.  *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) (explaining that "few awards exceeding a single-digit ratio between punitive and compensatory damages . . . will satisfy due process").  None of the punitive damages awarded in this case offend the Supreme Court's instruction.[4]

---

[3]      *Mason* was overruled on other grounds by *TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495, 497 (10th Cir. 2011).

[4]      Nor do the punitive damages awarded in this case conflict with guidance from the Supreme Court and our Circuit that courts should weigh:  (1) the degree of reprehensibility, (2) the disparity between actual and punitive damages, and (3) comparable cases.  *See Jones v. United Parcel Serv., Inc.*, 674 F.3d

Plaintiff focuses on a different issue.  In plaintiff's view, RICO's statutory text provides a clear answer to the question whether courts may award treble compensatory damages under RICO and punitive damages under a different law.  As our Circuit has observed, the Organized Crime Control Act of 1970, Pub. L. No. 91-452, 84 Stat. 923 (1970), was intended to strengthen "legal tools" and enhance "sanctions" through "new remedies" in order "to deal with the unlawful activities of those engaged in organized crime." *United States v. Hampton*, 786 F.2d 977, 980 (10th Cir. 1986) (internal quotation marks, citation, and emphasis omitted).  To plaintiff's exact point, the Organized Crime Control Act provides that "'[n]othing in this title shall supersede any provision of Federal, State, or other law imposing criminal penalties or affording civil remedies in addition to those provided for in this title.'" *Id.* (quoting Pub. L. 91-452 § 904(b)); *see also* Doc. 445 at 5 (quoting same).

The Ninth Circuit has put it this way:  "Since Congress has spoken clearly on this issue, . . . [w]e hold that a plaintiff may receive both treble damages under RICO and state law punitive damages for the same course of conduct." *Neibel v. Trans World Assurance Co.*, 108 F.3d 1123, 1130–31 (9th Cir. 1997).[5]  The Sixth Circuit also agrees. *See Avery Dennison Corp. v. Four*

---

1187, 1207–08 (10th Cir. 2012) (reviewing and analyzing these factors).  *First*, society has a strong public interest in punishing and deterring fraudulent conduct because such activities pose an inherent risk to social and economic stability.  *Second*, and as noted already, the disparity between the compensatory and punitive damages in this case doesn't offend Supreme Court precedent.  *See State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 425.  *Last*, the issue of comparable cases emphasizes this question:  "whether [defendants] had reasonable notice" that their unlawful conduct "could result in such a large punitive award." *Cont'l Trend Res., Inc. v. OXY USA, Inc.*, 101 F.3d 634, 641 (10th Cir. 1996).  Kansas statute, Kan. Stat. Ann. § 60-3701, authorizes and also limits punitive damages awards.  This law's existence means that defendants had notice not only about the possibility of a punitive damages award against them, but even the maximum limits on what a jury could assess.  *See Paradigm All., Inc. v. Celeritas Techs., LLC*, 722 F. Supp. 2d 1250, 1278 (D. Kan. 2010) (explaining that where certain state law claims entail a statutorily created possibility of related punitive damages, defendants were "placed on sufficient notice that they were subject to exemplary damages for their conduct" (citations omitted)).

[5]      *Neibel* was impliedly overruled on other grounds by the Supreme Court's holding in *Salinas v. United States*, 522 U.S. 52, 62 (1997), as discussed by the Ninth Circuit in *United States v. Fernandez*, 388 F.3d 1199, 1228 (9th Cir. 2004).

*Pillars Enter. Co.*, 45 F. App'x 479, 488 (6th Cir. 2002) (quoting *Neibel* in agreement and remarking that "Congress intended RICO to impose stringent civil penalties on organized illegal activity, above and beyond state-law remedies already available"). And the Fifth Circuit has remarked: "RICO's statutory language reflects congressional intent to supplement, rather than supplant, existing crimes and penalties." *United States v. Deshaw*, 974 F.2d 667, 671–72 (5th Cir. 1992) (citation omitted). The court agrees with these cases because RICO's statutory text makes clear that its penalty provisions do not come at the cost of other remedies. *Cf. Neibel*, 108 F.3d at 1131 ("Since Congress has spoken clearly on this issue, we are bound by its wishes."). Thus, RICO's mandatory treble compensatory damages provision does not preclude plaintiff from securing punitive damages under Kansas common law.

But, there's one more issue that neither party argues but the court is duty bound to acknowledge. At trial, the jury was instructed to consider a range of factors in reaching its determination of a proper punitive damages award. These factors included "the probable litigation costs incurred by plaintiff." Doc. 443 at 2. This detail, on its own, doesn't trouble the court. But relatedly, plaintiff presented evidence to the jury—during the punitive damages phase of trial—about the aggregate total cost that plaintiff incurred, including attorneys' fees.

Plaintiff's counsel adduced evidence during direct-examination that plaintiff had incurred approximately $500,00 in attorneys' fees and other expenses throughout the course of this litigation. Thus, the jury's calculus of punitive damages included consideration of attorneys' fees and costs that plaintiff may seek to recover under RICO. And this issue could produce a double damages recovery, which the court can't permit. Thus, the court concludes that (1) plaintiff is entitled to treble damages under RICO and punitive damages under Kansas common law, and (2) each defendant is entitled to a credit on the respective punitive damages they owe

plaintiff equal in amount to the attorneys' fees and costs that plaintiff already may recover based on the jury's civil RICO verdict. Plaintiff hasn't yet submitted any documents to support a precise amount owed for these costs. So, when plaintiff does bring forward these materials, the court orders plaintiff to calculate and show its work explaining how an award of fees and costs will avoid double recovery. Plaintiff is directed to consult Rule 54.2 from our court's Local Rules, which governs attorney fee awards. *See* D. Kan. Rule 54.2. And, plaintiff must comply with this Rule's requirements. *See id.* In sum, however, the court agrees with plaintiff and grants its motion on this question.

### 3. Survival of Damages Against Defendant Gordon Duval

Next, plaintiff raises a question whether the jury's award of RICO damages and state law punitive damages survives the death of defendant Gordon Duval and passes on to his wife, Kendra Duval, substituted as a party in this case. Defendants haven't responded to this argument. For this reason alone, the court could grant plaintiff's request that these damages survive Mr. Duval's passing. *See* D. Kan. Rule 7.4(b) (explaining that the court typically will grant unopposed motions "without further notice"). But here again, the court also agrees with the substance of plaintiff's arguments.

*First*, the court agrees with plaintiff's argument that RICO damages survive the death of a defendant. The court reaches this conclusion based on the breadth of supporting case law from around the nation. The Southern District of New York has agreed with this premise more than once. *See Holford USA Ltd. v. Harvey*, 169 F.R.D. 41, 43 (S.D.N.Y. 1996) ("A claim survives the death of a party if the claim is remedial rather than punitive." (citations omitted)); *see also Epstein v. Epstein*, 966 F. Supp. 260, 263 (S.D.N.Y. 1997) ("[S]uch claims survive a party's demise, whether the party be a plaintiff, or, as here, a defendant." (citations omitted)). The

District Court for the District of Columbia has reached the same conclusion.  *See First Am. Corp. v. Al-Nahyan*, 948 F. Supp. 1107, 1122 (D.D.C. 1996) (reviewing RICO's statutory text, similar cases, and concluding that "the Court is persuaded that a civil RICO suit survives the death of a defendant").  Likewise, the Eastern District of Michigan has agreed.  *See Cnty. of Oakland by Kuhn v. City of Detroit*, 784 F. Supp. 1275, 1285 (E.D. Mich. 1992) (remarking that a cause of action will survive a defendant's death when the penalty is remedial rather than punitive and holding, in agreement with other courts referenced in the opinion, that a plaintiff's civil RICO suit, including treble damages, survives a defendant's death).  The Northern District of Indiana also has confronted this issue and agreed with the rationales discussed, above.  *See State Farm Fire & Cas. Co. v. Est. of Caton*, 540 F. Supp. 673, 681–82 (N.D. Ind. 1982) (reviewing RICO's statutory construction and concluding that a "construction of RICO that permits full survival against the estate of an alleged wrongdoer is neither absurd nor surprising" (internal quotation marks and citation omitted)); *see also id.* at 682 ("To allow organized crime to profit by the fortuitous death of a principal defendant or alleged wrongdoer at the expense of the injured civil litigant would subvert the objectives of RICO, making its remedial and deterrent purposes impotent.").[6]

    *Second*, the court agrees with plaintiff that punitive damages under state law also should survive defendant Duval's death.  Here again, defendants didn't marshal any opposition.  *See* D. Kan. Rule 7.4(b).  Meanwhile, plaintiff offered thinner arguments—citing just one case from the Kansas Supreme Court.  *See* Doc. 445 at 8 (citing *Alain Ellis Living Tr. v. Harvey D. Ellis Living Tr.*, 427 P.3d 9, 23 (Kan. 2018)).  But against defendants' silence, plaintiff's lone citation offers persuasive meaning.  In *Ellis*, the Kansas Supreme Court concluded that "a trust and its

---

[6]    *State Farm Fire & Cas. Co. v. Est. of Caton* was overruled on other grounds by *Ashland Oil, Inc. v. Arnett*, 656 F. Supp. 950, 953 (N.D. Ind. 1987).

12

beneficiaries with a cause of action for a trustee's breach of trust and breach of fiduciary duties may seek punitive damages from the estate of a deceased trustee[.]" *Ellis*, 427 P.3d at 23. That case involved a specific statute different from the claims at issue in this case. But the Kansas Supreme Court's analysis is instructive. There, the court reviewed nearly identical punitive damages factors as those presented to the jury in this case. *See id.* at 19–20. Likewise, the court addressed with painstaking detail the course of similar cases in other courts, including competing views, and concluded that punitive damages should survive a defendant's death. *See id.* at 22 ("A trustee who believes the malfeasance can go undiscovered indefinitely, or at least until he or she is no longer alive, would not be restrained if courts could not impose postdeath punitive damages.").[7]

In sum, the court agrees with plaintiff on the merits. The court also notes that defendants haven't opposed this line of argument. *See* D. Kan. Rule 7.4(b). Thus, the court grants plaintiff's motion on the issue of RICO damages and punitive damages surviving the death of defendant Gordon Duval. Mr. Duval's estate is liable for these damages.

## C.   Injunctive Relief

The next issue is plaintiff's request for injunctive relief. Specifically, plaintiff has asked the court to "enjoin Defendants from activity similar to that with which Defendants violated RICO." Doc. 445 at 8. Plaintiff requests a broad assortment of injunctive relief, ranging from required dissolution of the defendant corporations to mandating that the individual defendants

---

[7]     The Kansas Supreme Court also predicted that its view would still enable juries to factor a party's death into its considerations. *See id.* at 22 (observing that jurors "will know the trustee has died" and remarking that this detail likely will affect "the weight" of each factor considered by the jury in its punitive damages award). Indeed, the facts of this case show that the court's prediction was correct. The jury in this case awarded a lower amount of punitive damages against the deceased defendant, Gordon Duval. *Compare* Doc. 444 at 2 (showing a jury award of $250,000 in punitive damages against Gordon and Kendra Duval), *with* Doc. 444 at 3 (showing a jury award of $1,000,000 in punitive damages against defendant Charles Elfsten).

disclose the details of this lawsuit to future business contacts. *See id.* at 11. And on this front, defendants have responded with a vigorous defense. *See* Doc. 446 at 4–12. But neither side's arguments merit extensive review for the independent reason that the court, in its discretion, declines to grant plaintiff's requested relief.

None of plaintiff's arguments involve a statutory or jurisprudential mandate. Rather, these arguments only touch the court's discretion to impose additional injunctive relief. *See, e.g.*, Doc. 445 at 8 ("[T]he weight of authority states that a private party has the right to request the district court to exercise its power under 18 US.C. § 1964(a) to issue an injunction against Defendants." (citation omitted)). Here, the court finds that the jury already has determined the appropriate relief in this case. So, the court needn't expand on its conclusions by imposing even more sanctions. The court thus denies plaintiff's pending motion to the extent it requests additional injunctive relief against the defendants.

### D.    Plaintiff's Request for Disclosure of Any Attorneys Assisting Defendants

This section of the court's Order considers plaintiff's request, raised in its Reply (Doc. 448), that "this [c]ourt should order Defendants to disclose the assistance and identity of" any attorneys assisting them in drafting recent filings. *Id.* at 22. As the court has noted repeatedly, all of the defendants in this case are proceeding pro se. But plaintiff observes that defendants' recent filings demonstrate a level of legal technicality conjuring a suspicion that these pro se parties have received undisclosed attorney support. *See id.* at 21 ("Upon reading Defendants' recent filings, it is clear to Watchous' counsel that Defendants have engaged one or more attorneys to write their briefs for them."); *see also id.* at 22 ("Watchous does not believe that any non-legally trained person would be able to find these authorities, let alone cite them appropriately.").

Plaintiff cites a case from our Circuit where the court ordered "that any ghostwriting of an otherwise pro se brief must be acknowledged by the signature of the attorney involved." *Duran v. Carris*, 238 F.3d 1268, 1273 (10th Cir. 2001) (per curiam).  In *Duran*, the court observed Fed. R. Civ. P. 11's requirement "that '[e]very pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or if the party is not represented by an attorney, shall be signed by the party.'"  *Id.* at 1271 (quoting Fed. R. Civ. P. 11(a)).  The court's language was couched to some extent in a way that implicates this case:  "We caution, however, that the mere assistance of drafting, *especially before a trial court*, will not totally obviate some kind of lenient treatment due a substantially pro se litigant."  *Id.* at 1273 (emphasis added).  But nevertheless, as just stated, our Circuit held that "*any* ghostwriting of an otherwise pro se brief must be acknowledged by the signature of the attorney involved." *Id.* (emphasis added).

This court's own research reveals that the Circuit has repeated this premise at least once more.  A few months after its decision in *Duran*, the Tenth Circuit wrote of the same point:  "we have expressed our concern with attorneys who 'author pleadings and necessarily guide the course of the litigation with an unseen hand.'"  *Barnett v. LeMaster*, 12 F. App'x 774, 778 (10th Cir. 2001) (quoting *Duran*, 238 F.3d at 1271).  This "concern stems from the undue advantage gained when unidentified attorneys author '*pro se*' pleadings."  *Id.*  The Circuit's point makes perfect sense because courts are instructed to "afford a *pro se* litigant's pleadings a more liberal construction than those drafted by an attorney[,]" and "the failure to sign a pleading shields an attorney from responsibility and accountability for his actions."  *Id.* (citations omitted).  Thus, our Circuit has held that "the failure of an attorney to acknowledge the giving of advice by

signing his name constitutes a misrepresentation to this court by both the litigant and attorney." *Id.* (citation omitted).

Neither of defendants' latest filings disclose the assistance of legal counsel. And plaintiff here has argued that the details of each brief all but admit that an attorney has "guide[d] the course of the litigation with an unseen hand." *Duran*, 238 F.3d at 1271 (internal quotation marks and citation omitted). So, the court must oblige our Circuit's instruction. And doing so comports with plaintiff's argument. Still, this conclusion begs another question—about enforcement.

The court notes that "Watchous does not request any sanctions for such undisclosed representation at this time[,]" nor has plaintiff put forth a plan for bringing these details to light (other than demanding that defendants do so). Doc. 448 at 22. And because plaintiff raised this argument in its Reply, defendants haven't had an opportunity to respond to this assertion. So, while the court agrees with the legal substance of plaintiff's argument, it declines to endorse plaintiff's fundamental assertion—that these pro se defendants actually have received undisclosed legal assistance. That's because the issue hasn't been fully briefed, so the court has only one side of the story to consider. It's also because the court, like plaintiff, shares an interest in finally concluding this years-old lawsuit. *See* Fed. R. Civ. P. 1.

Likewise, the court can't decipher a structured suggestion from plaintiff's arguments about how its request will mandate a disclosure. Plaintiff here asks the court to order that defendants disclose the names of any attorneys assisting them. The court grants the request. But also, the court won't advocate for plaintiff's position or investigate these accusations on plaintiff's behalf. Thus, the court agrees with plaintiff and orders that defendants comply by

disclosing the names of any attorneys providing them legal assistance.  Our Circuit requires this result.  *Duran*, 238 F.3d at 1273.

    E.    **Appropriate Form of Judgment**

    Having reviewed prerequisite issues affecting the form of Judgment that will follow from this Order, the court now considers the parties' competing views about some of the specific figures that will comprise the total damages assessment against each defendant.

        1.  **The Appropriate Date for Calculating Interest on Plaintiff's Damages**

    One such issue—which the parties dispute—is the appropriate date when any interest should start to accrue on the damages stemming from defendants' fraud.  Plaintiff argues that defendants "are liable for prejudgment interest from the date of Watchous' loss, July 29, 2016, through the entry of judgment at a rate of 10% per annum" under Kan. Stat. Ann. § 16-201.  Doc. 448 at 16.  Defendants disagree and argue that the correct date is April 21, 2017.  Doc. 446 at 12.

    Plaintiff has the better end of this argument.  Defendants base their argument on an earlier Order from this court, entered in November 2017.  *See id.* (citing Doc. 82 at 1).  Aside from predating the trial in this case by more than four years, this Order simply doesn't apply to the issue at hand.  There, the court awarded damages to plaintiff, but only against the Waterfall entities based on those companies' breach of a Settlement Agreement in this case.  *See* Doc. 82 at 1 (explaining that this Order "is limited to Count 1 of the Amended Complaint" which was a claim "seeking to enforce the Settlement Agreement").  On that issue, the Waterfall defendants failed to pay the first installment of the agreement, due on April 21, 2017.  *See* Doc. 40 at 6 (First Am. Compl. ¶ 39) (alleging that a "Settlement" obligated the Waterfall defendants to pay three installments of $35,000 beginning on April 21, 2017).  The Waterfall defendants never paid any of those installments, hence the court's Order in November 2017 requiring those defendants to

17

pay the total amount of those installments with interest accruing as of April 21, 2017.  *See* Doc. 82 at 1.  Plaintiff is right:  defendants' argument "confuses the issues and differing legal theories."  Doc. 448 at 15.

"Prejudgment interest on a federal court's judgment in a diversity case is a matter of state law."  *Macsenti v. Becker*, 237 F.3d 1223, 1245 (10th Cir. 2001) (citation omitted).  Here, the court considers the issue of prejudgment interest based not on diversity among the parties, but rather under its supplemental jurisdiction, via 28 U.S.C. § 1367.  Still, the operative premise is the same:  the forum state's laws apply.  And here, the forum state is Kansas.  So, the governing legal rule is this:  "A claim becomes liquidated when both the amount due and the date on which it is due are fixed and certain, or when the same become definitely ascertainable by mathematical computation."  *Plains Res., Inc. v. Gable*, 682 P.2d 653, 657 (Kan. 1984).  And it's "irrelevant that the underlying liability is disputed, so long as the amount of damages is certain."  *Green Constr. Co. v. Kan. Power & Light Co.*, 1 F.3d 1005, 1010 (10th Cir. 1993) (applying Kan. Stat. Ann. § 16-201 to claim for prejudgment interest (citation omitted)).  In other words, and even though defendants here still contest their underlying liability, that dispute is of no consequence to the determination at hand.  "The fact that a good faith controversy exists as to whether the defendant is liable for the money does not preclude a grant of prejudgment interest."  *Ireland v. Dodson*, 704 F. Supp. 2d 1128, 1146 (D. Kan. 2010) (citing *Crawford v. Prudential Ins. Co.*, 783 P.2d 900, 909–10 (Kan. 1989)).

The jury now has determined the appropriate amount of damages.  The amount therefore isn't in dispute.  Thus, the proper focus of this determination is "the time of the loss to the payment of the judgment."  *Id.* at 1140 (internal quotation marks and citation omitted).  And in this case, the time of the loss was July 29, 2016.  That's when "Watchous had wired Defendants

$182,600, which formed the basis of Watchous' fraud claims." Doc. 448 at 16. July 29, 2016 is the appropriate date when interest will begin to accrue on the related damages. In sum, plaintiff is entitled to the damages deemed due by the jury with prejudgment interest accruing at a rate of 10% per annum beginning July 29, 2016. *See* Kan. Stat. Ann. § 16-201 ("Creditors shall be allowed to receive interest at the rate of ten percent per annum . . . for any money after it becomes due[.]").

### F.     Proper Form of Judgment for Each Defendant

Now, the court must consider and specify the appropriate form of Judgment for each defendant. The court reaches these considerations because the foregoing analyses all bear upon the decisions that will follow. Plaintiff's arguments mainly carry the day and the court will grant most, but not all, of plaintiff's requests. *First*, the court affirms the Judgment already rendered against the Waterfall defendants, as explained below. *Second*, the court affirms the jury's damages awards against each individual defendant. But as noted already, the court won't permit plaintiff to recover attorneys' fees twice.[8] The court will leave this issue to plaintiff for it to consider when preparing its papers on an attorneys' fees award complying with our court's Local Rules. *See* D. Kan. Rule 54.2. *Third*, the court declines plaintiff's request for sweeping injunctive relief against the individual defendants. *Last*, the court agrees with the majority view that joint and several liability is appropriate for RICO liability and fraud under Kansas common law. *See United States v. Philip Morris USA, Inc.*, 316 F. Supp. 2d 19, 27 (D.D.C. 2004) ("Every circuit in the country that has addressed the issue has concluded that the nature of both civil and criminal RICO offenses requires imposition of joint and several liability because all defendants participate in the enterprise responsible for the RICO violations." (citations omitted));

---

[8]      Regardless, plaintiff still must provide to the court necessary documentation supporting its costs and fees. *See, e.g.*, *Ross*, 325 F. Supp. 3d at 1177–78 (explaining the required procedures for a plaintiff who seeks an award of attorneys' fees (citing D. Kan. Rule 54.2)).

*York v. InTrust Bank, N.A.*, 962 P.2d 405, 431 (Kan. 1998) (explaining that state law application of comparative fault doctrine and the related abolition of joint and several liability in Kansas for negligence actions does not alter the application of joint and several liability "for defendants in intentional tort actions").  The court identifies its specific conclusions, on a defendant-by-defendant basis, below.[9]

### 1. The Waterfall Entities (Waterfall Mountain USA LLC, Waterfall Mountain LLC, and Waterfall International Holdings Ltd.)

Here, the court adopts fully plaintiff's request.  *See* Doc. 445 at 10.  This determination isn't difficult to reach because the issues already were ordained.  By the Judgment entered against the Waterfall entities in November 2017, they already are liable for breaching the Settlement Agreement in this case.  *See* Doc. 82 at 1.  So, the court here holds that the Judgment stands and it's up to plaintiff to enforce it against the Waterfall entities.

### 2. Pacific National Capital

As for the other corporate defendant in this case, Pacific National Capital, the result is similar.  *First*, and as noted earlier in this Order, the court enters default judgment against Pacific National Capital based on its failure to secure legal counsel in this litigation and during the trial. *Second*, Pacific National Capital is liable to plaintiff for compensatory damages stemming from its fraudulent conduct for $182,600.  This amount does not include, but is subject to, prejudgment interest at a rate of 10% per annum, under Kan. Stat. Ann. § 16-201, beginning July 29, 2016 until the date of this Order's entry.  *Third*, Pacific is jointly and severally liable with the individual defendants (Elfsten, Hasegawa, Mournes, Zouvas, and Duval) for the compensatory damages awarded on plaintiff's state law fraud claim, which totals $182,600.

---

[9]     Here again, defendants didn't marshal any meaningful opposition to plaintiff's request.  Instead, their papers focused on other issues, addressed in earlier sections of this Order.  Although the court agrees with plaintiff on the merits, it also could grant this request because defendants failed to oppose it.  *See* D. Kan. Rule 7.4(b).

### 3.  Charles Elfsten

For defendant Charles Elfsten and the other individual defendants in this case, the court's task at this stage essentially is to enforce the jury's determinations.  Based on the jury's findings at trial, the following conclusions comprise the Judgment against defendant Elfsten:

- **Fraud Liability:**  Mr. Elfsten is liable to plaintiff for compensatory damages stemming from his fraudulent conduct.  These damages total $182,600.  In addition, prejudgment interest applies to this figure in an amount of 10% per annum, beginning on July 29, 2016, until the date when Judgment is entered, under Kan. Stat. Ann. § 16-201.

- **Civil RICO Liability:**  Mr. Elfsten also is liable to plaintiff under the jury's verdict for civil RICO liability, 18 U.S.C. § 1962(c), for an amount of $365,200, under 18 U.S.C. § 1964(c).  This amount is reduced from $547,800 to reflect RICO's mandatory treble damages provision while also eliminating a duplicative compensatory damages award for the jury's determination of liability for fraud.[10]

- **Attorneys' Fees and Costs Under RICO:**  Mr. Elfsten is liable to plaintiff for attorneys' fees and litigation costs per the jury's determination of civil RICO liability, under 18 U.S.C. § 1964(c).  The court can't determine the amount of this award currently, however, until plaintiff supplies the necessary documentation and follows required procedures for a litigant seeking attorneys' fees under D. Kan. Rule 54.2.

- **Joint and Several Liability:**  Mr. Elsten is jointly and severally liable for these damages alongside the other defendants in this lawsuit.

- **Punitive Damages:**  Mr. Elfsten is liable for the jury's punitive damages award against him, totaling $1,000,000.  He is solely liable for this amount.  However, and as noted by the court in an earlier section of this Order, defendant is entitled to a credit on this punitive damages amount equal to the attorneys' fees and costs that

---

[10]     Plaintiff recognizes that the jury awarded compensatory damages for the same amount—$182,600—for both fraud and RICO liability.  *See* Doc. 445 at 10.  And, plaintiff suggests that trebled RICO damages against each defendant be reduced by $182,600 to avoid double-recovery of damages. *See id.*  The court agrees with plaintiff and adopts its suggestion for each defendant, as this section of the Order explains.  The math is:  ($182,600 x 3) = $547,800 - $182,600 = $365,200.

plaintiff already will recover based on the jury's civil RICO verdict. This issue arises because the jury also considered litigation costs (including attorneys' fees) when determining this punitive damages award.

### 4. Mark Hasegawa

The form of Judgment against Mr. Hasegawa also tracks the jury's determinations at trial.

Here, the appropriate form of Judgment is as follows:

- **Fraud Liability:** Mr. Hasegawa is liable to plaintiff under the jury's determination of fraud liability for compensatory damages totaling $182,600. This figure is subject to prejudgment interest which accrues at a rate of 10% per annum, under Kan. Stat. Ann. § 16-201, from July 29, 2016, until the Judgment is entered.

- **Civil RICO Liability:** Mr. Hasegawa is subject to RICO's mandatory damages provisions, under 18 U.S.C. § 1964(c), for the jury's determination that he violated the civil RICO statute, 18 U.S.C. § 1962(c). This damages award totals $365,200, which is reduced from $547,800 to eliminate duplicative recovery of compensatory damages under plaintiff's fraud claim.

- **Attorneys' Fees and Costs Under RICO:** Mr. Hasegawa is liable to plaintiff for attorneys' fees and litigation costs per the jury's determination of civil RICO liability, under 18 U.S.C. § 1964(c). The court can't determine the amount of this award currently, however, until plaintiff supplies the necessary documentation and follows required procedures for a litigant seeking attorneys' fees under D. Kan. Rule 54.2.

- **Joint and Several Liability:** Mr. Hasegawa is jointly and severally liable for these damages alongside the other defendants in this lawsuit.

- **Punitive Damages:** Mr. Hasegawa is liable to plaintiff for the jury's award of $500,000 in punitive damages against him. Mr. Hasegawa is solely liable for this amount. However, and as noted by the court in an earlier section of this Order, defendant is entitled to a credit on this punitive damages amount equal to the attorneys' fees and costs that plaintiff already will recover based on the jury's civil RICO verdict. This issue arises because the jury also considered litigation costs (including attorneys' fees) when determining this punitive damages award.

### 5.  William Mournes

As with the other individual defendants, the court's task with respect to defendant William Mournes is to effectuate the jury's verdict.  Accordingly, the Judgment against Mr. Mournes consists of the following:

- **Fraud Liability:**  Under the jury's verdict in this case, Mr. Mournes is liable for defrauding plaintiff.  Accordingly, and as the jury decided, Mr. Mournes is liable to plaintiff for compensatory damages on this count for $182,600.  This amount is subject to prejudgment interest which accrues at a rate of 10% per annum, under Kan. Stat. Ann. § 16-201, beginning July 29, 2016, until the Judgment is entered.

- **Civil RICO Liability:**  The jury found for plaintiff on the civil RICO claim against Mr. Mournes, under 18 U.S.C. § 1962(c).  So, 18 U.S.C. § 1964(c) requires that he pay the mandatory damages provided under the civil RICO statute.  These damages total $365,200, which is reduced from $547,800 to eliminate duplicative damages in light of the compensatory damages that are awarded in this case for fraud.

- **Attorneys' Fees and Costs Under RICO:**  Mr. Mournes is liable to plaintiff for attorneys' fees and litigation costs per the jury's determination of civil RICO liability, under 18 U.S.C. § 1964(c).  The court can't determine the amount of this award currently, however, until plaintiff supplies the necessary documentation and follows required procedures for a litigant seeking attorneys' fees under D. Kan. Rule 54.2.

- **Joint and Several Liability:**  Mr. Mournes is jointly and severally liable with the other defendants for the damages described above.

- **Punitive Damages:**  Mr. Mournes is solely liable for the punitive damages award against him, as determined by the jury.  This award totals $1,000,000.  However, and as noted by the court in an earlier section of this Order, defendant is entitled to a credit on this punitive damages amount equal to the attorneys' fees and costs that plaintiff already will recover based on the jury's civil RICO verdict.  This issue arises because the jury also considered litigation costs (including attorneys' fees) when determining this punitive damages award.

### 6.  Mark Zouvas

Here again, the court's task in determining the appropriate form of Judgment for defendant Mark Zouvas tracks the jury's determinations at trial.  The Judgment against Mr. Zouvas—as determined by the jury—is as follows:

- **Fraud Liability:**  Mr. Zouvas was found liable by the jury in this case for defrauding plaintiff.  The jury likewise determined that Mr. Zouvas is liable to plaintiff for compensatory damages stemming from this conduct, which total $182,600.  This award is subject to prejudgment interest, under Kan. Stat. Ann. § 16-201, at a rate of 10% per annum beginning July 29, 2016, until the entry of Judgment.

- **Civil RICO Liability:**  The jury determined that Mr. Zouvas violated the civil RICO statute, 18 U.S.C. § 1962(c).  Thus, Mr. Zouvas is subject to RICO's mandatory damages provisions, explained in 18 U.S.C. § 1964(c).  In total, Mr. Zouvas therefore owes plaintiff $365,200, which is reduced from $547,800 to eliminate a duplicative damages award in light of the jury's verdict regarding compensatory damages for fraud.

- **Attorneys' Fees and Costs Under RICO:**  The jury's RICO verdict against Mr. Zouvas also means that he is obligated to pay attorneys' fees and costs to plaintiff, under 18 U.S.C. § 1964(c).  The court can't determine the amount of this award currently, however, until plaintiff supplies the necessary documentation and follows required procedures for a litigant seeking attorneys' fees under D. Kan. Rule 54.2.

- **Joint and Several Liability:**  Mr. Zouvas is jointly and severally liable with the other defendants in this case for the damages described above.

- **Punitive Damages:**  The jury in this case determined that Mr. Zouvas is liable to plaintiff for $500,000 in punitive damages.  Mr. Zouvas is solely liable to plaintiff for this amount.  However, and as noted by the court in an earlier section of this Order, defendant is entitled to a credit on this punitive damages amount equal to the attorneys' fees and costs that plaintiff already will recover based on the jury's civil RICO verdict.  This issue arises because the jury also considered litigation costs (including attorneys' fees) when determining this punitive damages award.

### 7.   Kendra Duval, as Personal Representative of the Estate of Gordon Duval

The court already determined in this Order that the jury's verdicts against Kendra Duval, as personal representative for the Estate of Gordon Duval, survive Mr. Duval's death. Accordingly, and like the other individual defendants, the jury's determinations guide the appropriate form of Judgment in this case.  These determinations are:

- **Fraud Liability:**  The jury found in plaintiff's favor on the claim that Mrs. Duval, as personal representative for the Estate of Gordon Duval, is liable for defrauding plaintiff.  The jury determined that a compensatory damages award of $182,600 is therefore due to plaintiff.  This amount is subject to prejudgment interest, under Kan. Stat. Ann. § 16-201, accruing at a rate of 10% per annum beginning July 29, 2016, until the entry of Judgment.

- **Civil RICO Liability:**  The jury found in plaintiff's favor on the claim that Gordon Duval violated the civil RICO statute, 18 U.S.C. § 1962(c).  Accordingly, a statutorily mandated damages award, under 18 U.S.C. § 1964(c), is due to plaintiff. This amount totals $365,200, which is reduced from $547,800 to eliminate duplicative damages awards in light of the jury's determination that compensatory fraud damages also are due in this case.

- **Attorneys' Fees and Costs Under RICO:**  The civil RICO statute also mandates, under 18 U.S.C. § 1964(c), that Mrs. Duval is liable for attorneys' fees and costs. The court can't determine the amount of this award currently, however, until plaintiff supplies the necessary documentation and follows required procedures for a litigant seeking attorneys' fees under D. Kan. Rule 54.2.

- **Joint and Several Liability:**  The Estate of Gordon Duval is jointly and severally liable with the other defendants in this case for the damages described above.

- **Punitive Damages:**  Mr. Duval's Estate is solely liable for the punitive damages award determined by the jury.  That award totals $250,000.  However, and as noted in an earlier section of this Order, defendant is entitled to a credit on this punitive damages amount equal to the attorneys' fees and costs that plaintiff already will recover based on the jury's civil RICO verdict.  This issue arises because the jury

also considered litigation costs (including attorneys' fees) when determining this punitive damages award.

## G.  Defendant Mark Zouvas's Motion to Reconsider (Doc. 447)

There's one more issue to address in this case.  After plaintiff filed its pending motion, but before plaintiff filed its Reply, defendant Mark Zouvas submitted a Supplemental Response to Motion Concerning Form of Judgment (Doc. 447).  Mr. Zouvas also is a signatory on the individual defendants' joint Response to Motion Concerning Form of Judgment (Doc. 446).  So, his Supplemental Response constitutes a standalone filing.  And because of this sequence of events, plaintiff's Reply also touches the issues argued in Mr. Zouvas's Supplemental Response.

This filing asks the court essentially to relitigate the entire lawsuit—or at least the claims brought against Mr. Zouvas at summary judgment and since then.  *See* Doc. 447 at 13 (arguing that the court should vacate its Order on summary judgment in this case and "order a new trial").  Mr. Zouvas argues for this outcome because he alleges the court here "has made a manifest error of law in assessing damages for breach of contract and fraud."  *Id.* at 1.  Likewise, he argues the court "also made a manifest error of law and fact" when granting summary judgment for plaintiff on the fraud claim.  *Id.*  Last, Mr. Zouvas contends that "there exists new evidence not previously available" to him in this case.  *Id.*

Because Mr. Zouvas proceeds pro se, the court affords a liberal construction to his filings.  *See Hall*, 935 F.2d at 1110.  On this approach, Mr. Zouvas's Supplemental Response most closely resembles a motion for reconsideration of the court's Order on the parties' motions for summary judgment (Doc. 335).  The court thus construes it as a motion for reconsideration, and, below, explains a few important aspects of how such motions are resolved.

26

### 1.  Legal Standards for Motions to Reconsider

There's more than one governing legal standard for motions to reconsider.  That's because the local procedures guiding a court's analysis depend on whether the order in question is one deemed "dispositive" or "non-dispositive."  The Supplemental Response overlooks any discussion of legal standards, even generally.  Nevertheless, the court reviews them here.  But first, the court notes one jurisprudential wrinkle, even though it won't affect the outcome at hand.

"Some uncertainty exists" under our court's Local Rules "whether orders disposing of some but not all claims are dispositive or non-dispositive[.]"  *Turner v. Nat'l Council of State Bds. of Nursing, Inc.*, No. 11-2059-KHV, 2013 WL 139750 at *1 (D. Kan. Jan. 10, 2013) (citations omitted).  Here, the Order on summary judgment didn't resolve every issue in the case.  The next section of this Order explains why Mr. Zouvas comes up short of sufficiency under any governing legal standard.  In other words, it doesn't matter whether the court construes the Order at issue as dispositive or non-dispositive because all of the governing legal frameworks lead to the same conclusion:  Mr. Zouvas's motion isn't sufficient, and the court thus denies it.

### a.  Legal Standard for Motions to Reconsider Non-Dispositive Orders

Our court's Local Rules provide a basic framework for revolving motions to reconsider non-dispositive orders.  "A party may file a motion asking a judge or magistrate judge to reconsider an order or decision made by that judge or magistrate judge."  D. Kan. Rule 7.3.  For non-dispositive orders, "[p]arties seeking reconsideration . . . must file a motion within 14 days after the order is filed unless the court extends the time."  D. Kan. Rule 7.3(b).  The motion for reconsideration must address:  "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice."[11]  *Id.*  To

---

[11]     Our Circuit has described "clear error of judgment" to mean that a district court's decision was "arbitrary, capricious, whimsical, or manifestly unreasonable[.]"  *Wright ex rel. Tr. Co. of Kan. v. Abbott*

make a long story shorter:  "D. Kan. Rule 7.3(b) governs motions to reconsider non-dispositive orders[.]"  *Skepnek v. Roper & Twardowsky, LLC*, No. 11-4102-KHV, 2012 WL 5907461, at *1 (D. Kan. Nov. 26, 2012) (citations omitted).

"A motion to reconsider is only appropriate where the Court has obviously misapprehended a party's position, the facts or applicable law, or where the party produces new evidence that it could not have obtained earlier through the exercise of due diligence."  *Id.*; *see also Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).  In other words, a party can't file a motion for reconsideration just to ask for a second bite of the same apple.  *See Skepnek*, 2012 WL 5907461, at *1 ("A motion to reconsider is not a second opportunity for the losing party to make its strongest case, to rehash arguments or to dress up arguments that previously failed." (citation omitted)); *see also Coffeyville Res. Refin. & Mktg., LLC v. Liberty Surplus Ins. Corp.*, 748 F. Supp. 2d 1261, 1264 (D. Kan. 2010) ("A motion to reconsider is available when the court has misapprehended the facts, a party's position, or the controlling law, but it is not appropriate to revisit issues already addressed or to advance arguments that could have been raised in prior briefing." (citing *Servants of the Paraclete*, 204 F.3d at 1012)).  Finally, "[w]hether to grant a motion to reconsider is left to the Court's discretion."  *Skepnek*, 2012 WL 5907461, at *1.

### b.  Legal Standards for Motions to Reconsider Dispositive Orders

When courts consider motions to reconsider dispositive orders, the Federal Rules of Civil Procedure provide the governing legal guide.  *See* D. Kan. Rule 7.3(a).  Specifically, Fed. R. Civ. P. 59 and 60 explain what's required for a viable motion to reconsider a dispositive order.  *See*

---

*Lab'ys, Inc.*, 259 F.3d 1226, 1235–36 (10th Cir. 2001) (internal quotation marks and citations omitted).  And, our court has described the term "manifest injustice . . . to mean direct, obvious, and observable error."  *Hadley v. Hays Med. Ctr.*, No. 14-1055-KHV, 2017 WL 748129, at *2 (D. Kan. Feb. 27, 2017) (internal quotation marks and citations omitted).

*Turner*, 2013 WL 139750, at *1 ("Rules 59 and 60 apply only to final orders and judgments that adjudicate all of the parties' remaining rights and liabilities." (citations omitted)).

Rule 59 permits a litigant to seek a new trial, alteration, or amendment of a judgment. Fed. R. Civ. P. 59.  Motions raised under this Rule must arrive to the court "no later than 28 days after the entry of judgment."  Fed. R. Civ. P. 59(b).  Timely motions arising after a jury trial also must specify "any reason for which a new trial has heretofore been granted in an action at law in federal court[.]"  Fed. R. Civ. P. 59(a)(1)(A).  Alternatively, a litigant may seek a new trial after a nonjury trial "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court[.]"  Fed. R. Civ. P. 59(a)(1)(B).  Last, Rule 59 contemplates motions to amend or alter judgments.  In this context, there's a time limit.  "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).

A litigant's other option is Rule 60.  That Rule contemplates scenarios involving a request for relief from a judgment or an order.  *See* Fed. R. Civ. P. 60.  There's a time limit under this Rule, too.  "A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."  Fed. R. Civ. P. 60(c)(1).  The "reasons" described by this limitation are as follows.  Reason one is "mistake, inadvertence, surprise, or excusable neglect[.]"  Fed. R. Civ. P. 60(b)(1).  Reason two is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)[.]"  Fed. R. Civ. P. 60(b)(2).  And reason three is "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party[.]"  Fed. R. Civ. P. 60(b)(3).  There's three other qualifying reasons why a litigant might have a viable motion to reconsider under Rule

60.  Reason four is that "the judgment is void[.]"  Fed. R. Civ. P. 60(b)(4).  Reason five is that "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is not longer equitable[.]"  Fed. R. Civ. P. 60(b)(5).  Last, reason six provides a catch-all:  "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).

### 2.  The Supplemental Response is Deficient Under the Governing Legal Standard for Non-Dispositive Orders

Here, the Order on summary judgment didn't dispose of every party or claim.  *See* Doc. 335 at 91 (disposing of some but not all claims raised at the summary judgment stage of this case).  Some courts have held that this scenario therefore involves a non-dispositive Order.  *See, e.g.*, *Coffeyville Res. Refin. & Mktg., LLC*, 748 F. Supp. 2d at 1264 (holding that a court should analyze an order on partial summary judgment under D. Kan. Rule 7.3(b) because the court's holding didn't determine every claim in the case).  Below, the court analyzes Mr. Zouvas's Supplemental Response under our court's Local Rules for motions to reconsider non-dispositive orders.

On this approach, Mr. Zouvas's request is time-barred.  Our court's Local Rules state a firm requirement that "[p]arties seeking reconsideration . . . *must* file a motion within 14 days after the order is filed unless the court extends the time."  D. Kan. Rule 7.3(b) (emphasis added).  Mr. Zouvas didn't request nor did the court grant any extensions of time.  The court entered the Order on summary judgment 500 days before Mr. Zouvas filed his Supplemental Response.  *Compare* Doc. 335 at 92 (showing that the court entered the summary judgment Order on March 13, 2020), *with* Doc. 447 at 15 (showing that defendant filed his Supplemental Response on July 26, 2021).  Thus, the ship sailed long ago and Mr. Zouvas may not pursue reconsideration of the court's Order under D. Kan. Rule 7.3(b).

### 3.   The Supplemental Response is Deficient Under the Governing Legal Standards for Dispositive Orders

The court now reviews Mr. Zouvas's Supplemental Response under the governing frameworks for motions to reconsider dispositive orders.  The outcome doesn't change.  Under Rule 59, this request is again time-barred.  That's because a motion to reconsider a dispositive order brought under Rule 59 must arise "no later than 28 days after the entry of judgment."  Fed. R. Civ. P. 59(b).  As the court just noted, Mr. Zouvas waited more than a year to argue that the court erred when ruling the summary judgment motions.  He now can't try for a second go at this litigation when the route for doing so was closed on April 10, 2020—"28 days after the entry of [the] judgment."[12]  *Id.*

This outcome leaves just one other avenue for Mr. Zouvas:  Rule 60.  But here again he's many days late.  *First*, the Supplemental Response fails to address any legal standards whatsoever, so the court must guess which criteria from Rule 60 he aims to invoke.  *Second*, reasons one, two, and three all have a time limit:  "for reasons (1), (2), and (3)[,]" the motion must arise "no more than a year after the entry of the judgment or order[.]"  Fed. R. Civ. P. 60(c)(1).  The Supplemental Response discusses arguments that might fit within these frameworks—supposed errors of fact and law and newly discovered evidence.  *See* Doc. 447 at 1.  But all of these arguments are barred for arriving far too late under Rule 60.[13]  Even if the

---

[12]     For another matter, Rule 59 contemplates judgments, but that Rule never mentions orders.  Here, the Order on Summary Judgment (Doc. 335) didn't include a Judgment.  So, the court also could deny the request for the independent reason that Rule 59 doesn't apply to this case's context.  Mr. Zouvas's Supplemental Response fails to identify any governing legal standards, so the court's effort here is aimed toward an exhaustive review of every possible avenue, even though this one might not even apply.

[13]     Also, it's worth noting that the Supplemental Response raises arguments and then fails to support them.  For instance, Mr. Zouvas contends that "there exists new evidence not previously available."  Doc. 447 at 1.  The court has reviewed his filing diligently.  But the court can't find even one example of newly discovered evidence of any kind.  The court can't accept mere labels and conclusory assertions, not even generally.  The spirit of this concern rings particularly true in this case because Mr. Zouvas now asks

court couched his arguments under reasons 4, 5, or 6—the categories that don't have a one year time limit—the court can't agree that the "motion under Rule 60(b) [was] made within a reasonable time[.]"  Fed. R. Civ. P. 60(c)(1).  So here too Mr. Zouvas's Supplemental Response is deficient.  *Last*, the court is mindful of our Circuit's directive that "relief under Rule 60(b) is extraordinary and may only be granted in exceptional circumstances."  *Stubblefield v. Windsor Cap. Grp.*, 74 F.3d 990, 994 (10th Cir. 1996) (internal quotation marks, alteration, and citation omitted).

This case is exceptional only in the sense that it has dragged on longer than it should've. But Mr. Zouvas's Supplemental Response is not "extraordinary" or "exceptional[.]"  *Id.*  He failed to raise winning arguments at summary judgment, and then later at trial.  Now, he seemingly would like to start over.  That isn't fair, sensible, or permitted.  *Cf.* Fed. R. Civ. P. 1 (instructing that courts should apply the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding").  Most of all, that's not how the Rules work for a motion to reconsider.  *See Skepnek*, 2012 WL 5907461, at *1 ("A motion to reconsider is not a second opportunity for the losing party to make its strongest case, to rehash arguments or to dress up arguments that previously failed." (citation omitted)); *see also Coffeyville Res. Refin. & Mktg., LLC*, 748 F. Supp. 2d at 1264 ("A motion to reconsider is available when the court has misapprehended the facts, a party's position, or the controlling law, but it is not appropriate to revisit issues already addressed or to advance arguments that could have been raised in prior briefing." (citing *Servants of the Paraclete*, 204 F.3d at 1012)).

In sum, the court denies the Supplemental Response (Doc. 447) for at least two reasons. The arguments are time barred regardless of which governing legal standard applies.  And, the

---

to redo the entire case despite years of delay, opportunities to argue his case, and extensive litigation on the merits.

Supplemental Response conflicts with the foundational premise that such motions aren't "appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Ferluga v. Eickhoff*, 236 F.R.D. 546, 549 (D. Kan. 2006) (citation omitted). The court thus denies the Supplemental Response (Doc. 447), which the court liberally construes as a motion for reconsideration.

## II.    Conclusion

Plaintiff initiated this lawsuit nearly five years ago. *See* Doc. 1 (Compl.). Since then, plaintiff and the court have confronted delay tactics implemented by defendants. The court issued sanctions in July 2018, for instance, because defendants refused to comply with discovery proceedings. *See* Doc. 164. Most recently, defendants pulled a proverbial "Hail Mary pass" trying to delay the trial. *See* Doc. 429 at 1 ("[T]he trial in this case already has been delayed almost to a point of absurdity." (citing Docs. 261, 271, 361, 369, 373, 375)). The court even has described "the defendants' history of hiring and firing multiple sets of attorneys" through "a *deliberate* pattern of obstruction and avoidance." Doc. 375 at 3 (internal quotation marks and citation omitted).

And still today, these defendants ask the court to delay the effect of the inevitable—a jury's rightful findings—by overlooking Supreme Court precedent, disregarding plain statutory language from Congress, and even relitigating the merits of the entire lawsuit. The court won't do that. A jury found defendants liable and now defendants must be held accountable for the jury's findings. Plaintiff's Motion Concerning Form of Judgment (Doc. 445) asks for precisely as much. The court thus grants plaintiff's motion in part and denies it in part.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion Concerning Form of Judgment (Doc. 445) is granted in part and denied in part. The motion is

denied only with respect to plaintiff's request for additional injunctive relief.  The motion is granted in all other respects, as outlined in this Order.  The court directs the Clerk of the Court to issue a Judgment consistent with this Order.

**IT IF FURTHER ORDERED BY THE COURT THAT** defendant Mark Zouvas's Supplemental Response to Motion Concerning Form of Judgment (Doc. 447), which the court liberally construes as a motion for reconsideration, is denied.

**IT IS SO ORDERED.**

**Dated this 27th day of September, 2021, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**