IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **WATCHOUS ENTERPRISES, LLC,**<br><br>**Plaintiff,**<br><br>v.<br><br>**PACIFIC NATIONAL CAPITAL,** *et al.***,**<br><br>**Defendants.** | Case No. 16-1432-DDC |

**MEMORANDUM AND ORDER**

Plaintiff Watchous Enterprises, LLC has filed a "Motion for Assessment of Attorneys' Fees and Reconsideration" (Doc. 452). Defendants Mark Hasegawa and Charles Elfsten responded to the motion by filing a Memorandum in Opposition (Doc. 455). Plaintiff then filed a Reply (Doc. 456), a Statement of Consultation (Doc. 457), and another Memorandum in Support of its Motion for Assessment of Attorneys' Fees (Doc. 458).

After reviewing all the submissions, the court grants in part and denies in part plaintiff's "Motion for Assessment of Attorneys' Fees and Reconsideration" (Doc. 452). Specifically, the court denies the portion of plaintiff's motion asking the court to reconsider its earlier Order holding that plaintiff can't recover both attorneys' fees and the punitive damage award because such an award would produce a duplicative recovery. The court grants the portion of plaintiff's motion that asks for an award of $489,853.50 in attorneys' fees and $68,967.21 in expenses. The court explains how it reaches these decisions, below.

**I.    Factual and Procedural Background**

Plaintiff filed this lawsuit more than five years ago. Doc. 1. The case has involved extensive discovery, multiple amendments to pleadings, and significant motions practice,

including dispositive motions. In summer 2021, the case proceeded to a jury trial on four claims against five defendants. After a four-day trial, the jury returned a verdict for plaintiff. Doc. 442. Specifically, the jury found for plaintiff and against defendants William Mournes, Kendra Duval (as personal representative for the Estate of Gordon Duval), Charles Elfsten, Mark Hasegawa, and Mark Zouvas on plaintiff's four claims for: (1) RICO violations under 18 U.S.C. § 1962(c); (2) RICO conspiracy under 18 U.S.C. § 1962(d); (3) damages due to defendants' fraud under Kansas common law; and (4) civil conspiracy to commit fraud under Kansas common law. *Id.* at 1–15. Also, the jury found plaintiff was entitled to a punitive damages award against all five defendants. *Id.* at 3, 6, 9, 12, 15. After hearing evidence on punitive damages, the jury awarded punitive damages against all five defendants. *See generally* Doc. 444. Specifically, the jury awarded $1,000,000 in punitive damages against William Mournes, $250,000 in punitive damages against Kendra Duval (as personal representative for the Estate of Gordon Duval), $1,000,000 in punitive damages against Charles Elfsten, $500,000 in punitive damages against Mark Hasegawa, and $500,000 in punitive damages against Mark Zouvas. *Id.* at 1–5.

Post-verdict, the court granted plaintiff's Motion for Default Judgment against defendant Pacific National Capital based on its failure to secure legal counsel generally and for the trial. Doc. 449 at 20. The court found Pacific National Capital liable to plaintiff for fraud and awarded compensatory damages of $182,600. *Id.*

Also, the court granted plaintiff's request for an award of treble damages, attorneys' fees, and costs because the RICO statute, 18 U.S.C. § 1964(c), explicitly mandates such an award. *Id.* at 5–6. But, the court recognized that "the jury was instructed to consider a range of factors in reaching its determination of a proper punitive damages award" for the fraud claim under Kansas law including "'the probable litigation costs incurred by plaintiff.'" *Id.* at 10 (quoting Doc. 443

2

at 2 (Instruction No. 2)).  And, "plaintiff presented evidence to the jury—during the punitive damages phase of trial—about the aggregate total cost that plaintiff incurred, including attorneys' fees" amounting to about $500,000.  *Id.*  The court expressed concern that an attorneys' fee award coupled with the punitive damages award "could produce a double damages recovery, which the court can't permit."  *Id.*  So, the court concluded "that (1) plaintiff is entitled to treble damages under RICO and punitive damages under Kansas common law, and (2) each defendant is entitled to a credit on the respective punitive damages they owe plaintiff equal in amount to the attorneys' fees and costs that plaintiff already may recover based on the jury's civil RICO verdict."  *Id.* at 10–11.

On September 27, 2021, the court entered Judgment against defendants and awarded plaintiff compensatory and punitive damages on its RICO, RICO conspiracy, fraud, and civil conspiracy claims.  Doc. 451.

Plaintiff's current motion asks the court to award it $489,853.50 in attorneys' fees and $68,967.21 in non-taxable expenses.  Doc. 452 at 2; Doc. 458 at 1.  Also, plaintiff asks the court to reconsider the portion of its Order finding that an award of attorneys' fees is duplicative of the jury's punitive damages award and permitting defendants to credit the attorneys' fee award against the punitive damages awarded by the jury against each defendant.  Doc. 452 at 2.  The court considers both requests, below.

**II.     Motion for Reconsideration**

The court first addresses the part of plaintiff's motion asking the court to reconsider its ruling that plaintiff's attorneys' fee award is duplicative of the punitive damages award, thus requiring an offset against the punitive damages award.

### A. Legal Standard

The grounds "warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (discussing Fed. R. Civ. P. 59(e)'s requirements); *see also* D. Kan. Rule 7.3(b) (explaining reconsideration of non-dispositive orders must be based on "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice"). "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Servants of the Paraclete*, 204 F.3d at 1012 (citation omitted). But, it "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.* (citation omitted); *see also Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) (explaining that, on a Rule 59(e) motion, "courts will not address new arguments or evidence that the moving party could have raised before the decision issued"). A district court has discretion when deciding whether to grant or deny a motion to reconsider. *Hancock v. City of Okla. City*, 857 F.2d 1394, 1395 (10th Cir. 1988).

### B. Analysis

Plaintiff's motion neglects the standard governing motions for reconsideration. It never argues that the court should reconsider its earlier Order based on an intervening change in the controlling law or new evidence previously unavailable. And, it never explicitly argues that the court should reconsider its Order based on a need to correct clear error or prevent manifest injustice. Just once, plaintiff asserts that the court "will commit error if it reduces the punitive

damages[.]" Doc. 453 at 5.  So, the court assumes that plaintiff intended to ask the court to reconsider its Order based on a need to correct clear error.

Plaintiff's motion never demonstrates clear error when the court ruled that plaintiff can't recover both RICO attorneys' fees and the punitive damages award.  As the court held, allowing plaintiff to recover both awards would produce a duplicative damages award.  The court instructed the jury that it should consider several factors when determining the punitive damage award, including plaintiff's litigation costs.  Doc. 443 at 2.  Plaintiff presented evidence to the jury that it had incurred about $500,000 in attorneys' fees and expenses through the course of this litigation.  And, the jury eventually returned a verdict finding defendants liable for punitive damages in an aggregate amount of $3,250,000.  Doc. 444 at 1–5.  The court assumes that the jury followed the court's instructions.  *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (describing the "assumption of the law that jurors follow their instructions" (citation omitted)); *see also United States v. Urbano*, 563 F.3d 1150, 1155 (10th Cir. 2009) ("This court generally assumes jurors follow jury instructions." (citation omitted)).  Because the court instructed the jury to consider plaintiff's attorneys' fees and expenses when determining the punitive damage award, and it assumes that the jury followed those instructions, the court can't permit plaintiff to recover its attorneys' fees both under RICO and the punitive damage award because that award will produce a double damages recovery.  *See MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am. Express, Inc.*, 962 F.2d 1470, 1473 (10th Cir. 1992) ("[A] plaintiff generally may not double recover damages." (citations omitted)).

Plaintiff fails to come forward with any arguments that convince the court it clearly erred by reaching this conclusion.  Instead, plaintiff asserts arguments that it could have raised or rehashes arguments that it made previously when briefing the "Motion Concerning Form of

5

Judgment."  Doc. 445; *see also* Doc. 448.  And, that's not proper argument on a motion for reconsideration.  *See Castanon v. Cathey*, 976 F.3d 1136, 1141 (10th Cir. 2020) (explaining that motion to reconsider "may not be used to relitigate old matters" or "simply rehash[ ]" arguments already asserted (citations and internal quotation marks omitted)); *see also Servants of the Paraclete*, 204 F.3d at 1012 (explaining that it "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing" on a motion to reconsider (citation omitted)).  In any event, none of plaintiff's arguments require the court to reconsider its Order.

*First*, plaintiff argues that once the jury found defendants liable for violating RICO, an award of attorneys' fees "became mandatory" under 18 U.S.C. § 1964(c).  Doc. 453 at 3.  That's correct.  *See, e.g.*, *Genty v. Resol. Tr. Corp.*, 937 F.2d 899, 914 (3d Cir. 1991) (observing that RICO's "plain language . . . instructs that injured persons 'shall recover' treble damages and costs and attorneys fees" and remarking that this statutory language connotes a mandatory provision (quoting 18 U.S.C. § 1964(c))).  And, the court awarded plaintiff's attorneys' fees consistent with that statute.  *See* Doc. 449 at 6.  But, plaintiff goes on to argue that "the fact that attorneys' fees would be mandatorily awarded under § 1964(c) was considered by the jury during the punitive damage phase of the trial in determining the appropriate amount of punitive damages."  Doc. 453 at 3.  That's not true.  The jury never was instructed about RICO's attorneys' fees provision.  But, in the punitive damages phase of the trial, the jury received instructions about factors it should consider when determining a punitive damage award under Kansas law.  Those factors included:

    1) The likelihood at the time of the alleged misconduct that serious harm would arise from the defendant's misconduct;
    2) the degree of the defendant's awareness of that likelihood;
    3) the profitability of the defendant's misconduct;

6

> 4) the duration of the misconduct and any intentional concealment of it;
> 5) the attitude and conduct of the defendant upon discovery of the misconduct;
> 6) the financial condition of the defendant;
> 7) the total deterrent effect of other damages and punishment imposed upon the defendant as a result of the misconduct, including the severity of the criminal penalties to which the defendant has been or may be subjected; and
> 8) *the probable litigation costs incurred by plaintiff.*

Doc. 443 at 2 (emphasis added); *see also Werdann v. Mel Hambelton Ford, Inc.*, 79 P.3d 1081, 1092 (Kan. Ct. App. 2003) ("[I]n fixing an award of punitive damages, a trial court may consider the plaintiff's probable litigation expenses, including attorney fees." (citations omitted)). As already discussed, the court assumes that the jury followed those instructions. *Richardson*, 481 U.S. at 206. The jury heard evidence from plaintiff that it had spent about $500,000 in litigation fees and expenses. And, it awarded an aggregate punitive damage award against all five defendants for $3,250,000—more than six times the amount of litigation expenses that plaintiff presented to the jury. Given plaintiff's limited evidence during the punitive damage phase of the trial, the court fairly infers that the jury's punitive damage award includes litigation expenses plaintiff incurred and presented as evidence to the jury. So, the court can't award plaintiff both the punitive damages award and its attorneys' fees under RICO because that would produce a double recovery to plaintiff.

*Second*, plaintiff argues that the court's Order reduced the jury's punitive damages award, thus violating plaintiff's Seventh Amendment right to a jury trial. Our Circuit has explained that "the Seventh Amendment protects a federal plaintiff's right to have a jury determine the amount of a punitive damage award." *Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1204 (10th Cir. 2012); *see also Cap. Sols., LLC v. Konica Minolta Bus. Sols. U.S.A., Inc.*, 695 F. Supp. 2d 1149, 1152 (D. Kan. 2010) (Lungstrum, J.) (concluding that "the Seventh Amendment does require that the jury also be allowed to determine the amount of any punitive damages awarded"). And,

7

"'in an ordinary remittitur case, the plaintiff must be offered a choice between a new trial and accepting a remittitur to avoid a serious problem under the Seventh Amendment, which reserves to the jury the determination of damages.'" *Jones*, 674 F.3d at 1204 (quoting *O'Gilvie v. Int'l Playtex, Inc.*, 821 F.2d 1438, 1447 (10th Cir. 1987)). But, this isn't an ordinary remittitur case. Indeed, here, the court hasn't ordered remittitur. It already has entered Judgment for plaintiff on the punitive damage awards that the jury returned for plaintiff. Doc. 451 at 2–3.

But, the court does conclude that defendants should receive a credit against their respective punitive damages awards for any payment of the attorneys' fee award because plaintiff chose to use evidence of its litigation expenses to support its punitive damages case. Naturally, the court didn't instruct the jury that plaintiff, as a party prevailing on a RICO claim, would recover, by statute, its attorneys' fees and expenses. In sum, allowing plaintiff to recover both awards would produce a duplicative recovery. And, even if one views this approach as a remittitur of sorts, the court has authority to reduce a punitive damages award that violates the Due Process protections of the Fourteenth Amendment. *See Jones*, 674 F.3d at 1208 n.8 (explaining that reducing a punitive damage award to comply with the Due Process Clause doesn't implicate Seventh Amendment concerns (citations omitted)). "'[T]he Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor.'" *Id.* at 1206–07 (quoting *Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1121 (10th Cir. 2004)). When courts analyze the constitutionality of a punitive damages award, the Supreme Court has instructed that they must "look to 1) the degree of reprehensibility of the defendant's action; 2) the disparity between the actual harm suffered by the plaintiff and the punitive damage award; and 3) the difference between the punitive damage

award and the civil penalties authorized or imposed in comparable cases." *Hardman*, 377 F.3d at 1121 (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574–75 (1996)).

Here, plaintiff has secured a judgment against defendants awarding it $365,200 in compensatory damages for its RICO claims, $182,600 for its fraud and civil conspiracy claims, and $3,250,000 for punitive damages. Under the three factors discussed above, the court finds that the punitive damages award is constitutionally excessive because it duplicates the jury's consideration of plaintiff's litigation expenses and the attorneys' fee award plaintiff is entitled to recover under RICO. *See Jones*, 674 F.3d at 1207–08 (concluding that a $2 million punitive damages award was excessive because: (1) defendant's "conduct resulted solely in economic injury to" plaintiff and defendant "did not act with disregard for the health and safety of others" thus the conduct was not "so reprehensible as to warrant a $2 million punitive damage award[;]" (2) "the jury's award of $630,307 in actual damages was substantial . . . in light of the injuries he suffered[,]' and thus, the $2 million "punitive damage award was grossly excessive[;]" and (3) a "review of comparable employment cases support[ed] [the] conclusion that the jury's punitive damage award was excessive"). A recovery of the punitive damages award combined with the attorney fee award uses plaintiff's attorneys' fees to double dip. Allowing plaintiff to recover its attorneys' fees under RICO without crediting those payments against the punitive damages award based in part on plaintiff's attorneys' fees would result in "imposition of [a] grossly excessive" and "arbitrary punishment" on defendants which violates the Due Process Clause. *Id.* at 1206–07. Thus, the court declines to reconsider its decision prohibiting plaintiff from recovering double damages.

*Third*, plaintiff argues that the court's Order "essentially supersede[s] Kansas law governing punitive damages" because it concludes plaintiff can't recover both its attorneys' fees

9

under RICO and the punitive damages award that includes the jury's consideration of litigation expenses. Doc. 453 at 4. The court's decision doesn't supersede Kansas law. Indeed, it enforces Kansas law. As already noted, the court has entered Judgment for plaintiff on the jury's entire punitive damages award under Kansas law. Doc. 451 at 2–3. But, the court won't allow plaintiff to "double recover damages" because the law does not permit it. *MidAmerica Fed. Sav. & Loan Ass'n*, 962 F.2d at 1473.

*Fourth*, plaintiff argues that no duplication of damages occurred here because the RICO attorneys' fee award is remedial while the punitive damages award serves as a punishment. Thus, plaintiff asserts, the awards aren't duplicative because they serve different purposes. The court agrees that one purpose of a punitive damage award is to punish. But—as plaintiff requested at trial—the court instructed the jury that it "should consider" plaintiff's litigation costs when determining the amount of punitive damages to award. Doc. 443 at 2. Plaintiff presented evidence of those actual costs to the jury and asked the jury to award it those costs as part of a punitive damage award. The jury's award—at least as it considered plaintiff's litigation costs—was, in effect, remedial because it compensated plaintiff for the litigation expenses it incurred. Also, the differing purposes for awarding attorneys' fees versus punitive damages don't overcome the court's concern that it shouldn't grant plaintiff a windfall by awarding it double damages for its attorneys' fees and expenses incurred in this litigation.

*Last*, if the court refuses to reconsider its decision prohibiting plaintiff from recovering both the attorneys' fee award under RICO and the punitive damages award, plaintiff contends the court at least should reconsider the portion of its Order permitting each defendant a credit for the attorneys' fees award against their respective punitive damages awards. Instead, plaintiff argues that the court should employ a proportional approach that credits each defendant a percentage of

the overall attorneys' fee award against their individual punitive damages award based on the proportion that each defendant owes toward the total amount of the punitive damages awards. Doc. 453 at 6. Defendants Mark Hasegawa and Charles Elfsten disagree with this proposal, arguing that the proportional approach conflicts with the requirement that defendants are liable jointly and severally for the attorneys' fee award. The court agrees with defendants.

Each defendant is jointly and severally liable for the attorneys' fee award. And, each defendant is individually liable for the individualized punitive damages award that the jury awarded. To the extent any defendant pays some or all of the attorneys' fee award, that defendant can credit the amount paid against the individual punitive damages award he or she owes.[1] For example, if defendant Charles Elfsten pays the entire attorneys' fee award of $558,820, then he can credit that amount against the $1,000,000 punitive damages award he owes. He still will owe the remaining amount of the individual punitive damages award against him, and he can seek contribution from the other defendants based on their joint and several obligations to pay the attorneys' fee award. As another example, if Kendra Duval (as personal representative for the Estate of Gordon Duval) pays the entire attorneys' fee award, then she will have discharged her obligation to pay the $250,000 individual punitive damages award against her. And, she can seek contribution from the other defendants for the amounts they owe on their joint and several obligations to pay the attorneys' fee award. This approach provides each defendant an incentive to pay the attorneys' fee award first because it allows that defendant to

---

[1] To the extent plaintiff is reading the court's earlier Order as permitting each of the five defendants to credit the total amount of the attorneys' fee award against each of the five individual punitive damages awards, the court never meant to convey such an approach. Plaintiff is correct that such an approach impermissibly would reduce the punitive damage award by five times the amount of any payment on the attorneys' fee award. And, that's not what the court ordered. Instead, as explained above, the court orders as follows: For any defendant who makes payment of some or all of the joint and several attorneys' fee award, that defendant may credit the amount paid against the individual punitive damages award that the paying defendant owes to plaintiff.

offset more of the attorneys' fees award against the amount of punitive damages owed, while giving that defendant the ability to seek contribution against the co-defendants who are jointly and severally liable for the fee award.

In sum, the court denies plaintiff's Motion for Reconsideration.  Plaintiff has failed to demonstrate that the court committed clear error by concluding that plaintiff cannot recover both attorneys' fees under RICO and the entire punitive damages award because such a recovery is duplicative.  Instead, the court concludes:  (1) plaintiff is entitled to recover the attorneys' fee award against all defendants jointly and severally and the individual punitive damages award against each defendant individually; and (2) any defendant who pays some or all of the attorneys' fee award may credit that amount against the amount of punitive damages that the paying defendant individually owes to plaintiff.

### III.    Motion for Attorneys' Fees

Next, the court addresses plaintiff's request for attorneys' fees and expenses.  Plaintiff asks the court to award it $489,853.50 in attorneys' fees and $68,967.21 in expenses.  Doc. 458 at 1.  Our court's local rule, D. Kan. Rule 54.2, governs requests for an award of statutory attorneys' fees.  The local rule requires a party seeking attorneys' fees to "promptly initiate consultation with the other party or parties."  D. Kan. Rule 54.2(a).  If the parties disagree about an attorney fee award, the party seeking fees "must file . . . (1) a statement that, after consultation in accordance with this rule, the parties have been unable to reach an agreement with regard to the fee award; and (2) a memorandum setting forth the factual basis for each criterion that the court is asked to consider in making an award."  D. Kan. Rule 54.2(c).  The Rule provides that the "statement of consultation must set forth the date of the consultation, the names of those who participated, and the specific results achieved."  D. Kan. Rule 54.2(d).  And it warns:  "The court

will not consider a motion for statutory attorney's fees made pursuant to Fed. R. Civ. P. 54(d)(2) until the moving party files the statement of consultation in compliance with this rule." *Id.*

Plaintiff filed the required Statement of Consultation. Doc. 457. Plaintiff asserts that it initiated consultation with defendants on October 13, 2021, by providing copies of its billing reports and proposing a conference to discuss the fee request. *Id.* at 1. Plaintiff reports that no defendant responded to its communication. *Id.* Plaintiff next wrote defendants on October 22, 2021, again asking for a conference to discuss the fee request. *Id.* Again, no defendant responded. *Id.* Thus, plaintiff asserts that defendants have refused to consult with plaintiff about the fee request, and, as a consequence, the parties have been unable to reach an agreement. *Id.* at 1–2. On these facts, the court finds that plaintiff has complied with the requirements of D. Kan. Rule 54.2.

When responding to plaintiff's original motion asking for attorneys' fees and expenses, defendants Mark Hasegawa and Mark Elfsten asserted that they were not "attacking the reasonableness of [the] requested fees or Plaintiff's right to recover its fee incurred in pursuing a successful RICO claim." Doc. 455 at 2. Also, no defendant has responded either to plaintiff's Statement of Consultation (Doc. 457) or plaintiff's supplemental Memorandum in Support of its Motion for Assessment of Attorneys' Fees (Doc. 458), which provides a detailed accounting of the fees and expenses that plaintiff seeks. Because no defendant has responded to the part of plaintiff's motion seeking the requested amount of attorneys' fees and expenses, the court may "consider and decide the motion as an uncontested motion." *See* D. Kan. Rule 7.4(b). "Ordinarily, the court will grant [an uncontested] motion without further notice." *Id.* But, as explained below, the court grants the motion on its merits.

### A. Legal Standard

The district court has broad authority over awards of attorneys' fees. *Law v. Nat'l Collegiate Athletic Ass'n*, 4 F. App'x 749, 751 (10th Cir. 2001); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000).

When determining whether a requested fee award is reasonable, "a court must begin by calculating the so-called lodestar amount of a fee" which is "the product of the number of attorney hours 'reasonably expended' and a 'reasonable hourly rate.'" *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (further citations and internal quotation marks omitted)). The party requesting attorneys' fees bears the burden to prove the amount of hours spent on the case and the appropriate hourly rates. *United Phosphorus*, 205 F.3d at 1233 (citation omitted). Once an applicant satisfies this burden, the court presumes that the lodestar figure is a reasonable fee. *Robinson*, 160 F.3d at 1281; *see also Weaver v. JTM Performant Recovery, Inc.*, No. 2:13-cv-2408-JTM, 2014 WL 4843961, at *4 (D. Kan. Sept. 29, 2014) ("Once an applicant has met this burden, the lodestar figure is presumed to be a reasonable fee.").

After determining the lodestar, the court may adjust that figure upward or downward "'to account for the particularities of the suit and its outcome.'" *Fox v. Pittsburgh State Univ.*, 258 F. Supp. 3d 1243, 1254 (D. Kan. 2017) (quoting *Zinna v. Congrove*, 680 F.3d 1236, 1242 (10th Cir. 2012)). This approach requires the court to consider the factors in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). These *Johnson* factors are: (1) time and labor required; (2) novelty and difficulty of the questions presented in the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of

14

the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717–19.

Although the court may consider each of these factors, it need not consider those factors "'subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'" *Fox*, 258 F. Supp. 3d at 1254 (quoting *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1281 (D. Kan. 2016)). This is so because the "lodestar calculation is meant to be the primary consideration when awarding fees rather than the *Johnson* factors." *Id.* (citing *Anchondo v. Anderson, Crenshaw & Assocs., LLC*, 616 F.3d 1098, 1103 (10th Cir. 2010)).

### B. Analysis

Plaintiff asserts that its requested attorneys' fee award is a reasonable amount of fees incurred prosecuting this lawsuit. With its fee request, plaintiff has submitted an Affidavit signed by counsel. Doc. 458-1. It explains that plaintiff's fee request seeks fees for the time that nine attorneys, four paralegals, and two law clerks spent working on the matter. *Id.* at 2 (James Walker Aff. ¶ 4). Attached to the Affidavit are billing records showing that the attorneys spent 2,174.4 hours working on the case. *Id.* at 127, 129; *see also* Doc. 458 at 8. Plaintiff asserts that the attorneys' hourly rates and the hours expended on the litigation are reasonable. Doc. 458 at 3–17.

*First*, the court considers whether the hourly rates charged by the lawyers, paralegals, and law clerks are reasonable. Plaintiff asserts that the average hourly rates the attorneys charged in

the case ranged from $135 for a lawyer with two years' experience to $346.81 for a lawyer with 45 years' experience. Doc. 458 at 6–7. Also, the average hourly rates for paralegals and law clerks ranged from $110 to $125. *Id.* at 7. Plaintiff asserts that these hourly rates are reasonable and within the range of hourly rates for "what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1256 (10th Cir. 1998) (citation and internal quotation marks omitted). For support, plaintiff cites other cases from our court approving as reasonable hourly rates similar to those charges by plaintiff's attorneys and staff in this case. Doc. 458 at 5–6 (first citing *Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM-ADM, 2020 WL 6343292, at *16–17 (D. Kan. Oct. 29, 2020) (finding reasonable rates of $625 per hour for partner with 27 years' experience, $425 per hour for counsel with 13 years' experience, $350 per hour for associate with seven years' experience, and $185 for a paralegal with 27 years' experience because they were consistent with top-tier Wichita rates and top-tier employment litigation rates in Kansas City); then citing *M.B. v. Howard*, ___ F. Supp. 3d. ___, 2021 WL 3681084, at *7, 14 (D. Kan. Aug. 19, 2021) (noting that "cases assessing [the District of Kansas's] market have found hourly rates between $175 to $625 reasonable based on the attorney's experience" and finding "a rate of $150 per hour reasonable for paralegals and staff working the case")). Also, plaintiff cites a national survey showing that the average rates for lawyers in the Wichita area is between $190 and $500, depending on experience. *Id.* at 6 (citing R.L. Burdge, *United States Consumer Law Attorney Fee Survey Report 2015–2016*, 243–44 (2018), https://www.nclc.org/images/pdf/litigation/tools/atty-fee-survey-2015-2016.pdf (showing average rates between $190 and $500 depending on experience for Wichita, Kansas)).

The court agrees with plaintiff. The hourly rates charged by the lawyers, paralegals and law clerks involved in this action are reasonable. The hourly rates are consistent with hourly rates approved by our court in cases involving counsel with similar experience, as shown by plaintiff's cited cases and others. *See*, *e.g.*, *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1281 (D. Kan. 2016) (Lungstrum, J.) (finding, in 2016, reasonable "hourly rates ranging from $325.00 per hour for lead counsel, $350.00 per hour for a firm partner, $200.00 per hour for an associate attorney, and $125.00 per hour for paralegal time"); *Barbosa v. Nat'l Beef Packing Co., LLC*, No. 12-2311-KHV, 2015 WL 4920292, at *10 (D. Kan. Aug. 18, 2015) (Vratil, J.) (finding, in 2015, hourly rates ranging from $180 to $425 reasonable, depending on each attorney's level of experience, in an FLSA case). The court thus finds reasonable the hourly rates charged by the attorneys, paralegals, and law clerks who worked on this matter for plaintiff.

*Next*, the court considers the amount of time that plaintiff's attorneys devoted to this matter. Plaintiff seeks to recover attorneys' fees for 2,174.4 hours its counsel spent prosecuting the litigation. When determining whether the amount of time spent on a matter is reasonable, our Circuit has instructed courts to consider:

> (1) whether the tasks being billed would normally be billed to a paying client, (2) the number of hours spent on each task, (3) the complexity of the case, (4) the number of reasonable strategies pursued, (5) the responses necessitated by the maneuvering of the other side, and (6) potential duplication of services by multiple lawyers.

*Robinson*, 160 F.3d at 1281 (citation and internal quotation marks omitted). Plaintiff has submitted 125 pages of detailed billing records recording the time that all attorneys and staff devoted to the case. Doc. 458-1 at 5–129. The specific tasks recorded are proper charges for

17

prosecuting plaintiff's claims against defendants. And, after considering the *Robinson* factors, the court finds the time spent on each task is reasonable.

To the extent that defendants complain about the level of effort plaintiff's attorneys devoted to this action, defendants must remember that they needlessly complicated plaintiff's effort to prosecute the case to completion. For instance, Judge Marten noted "defendants' history of hiring and firing multiple sets of attorneys" coupled with the repeated requests to continue the trial setting "remove[d] any doubt as to the nature of the pattern of delay." Doc. 375 at 3.

Concluding that counsel's hourly rates and the amount of time devoted to the matter are reasonable, the court finds that the lodestar calculation—*i.e.*, $489,853.50 —is reasonable. *See Robinson*, 160 F.3d at 1281 (explaining that once an attorneys' fee award applicant satisfies its burden to prove the amount of hours spent on the case and the hourly rates charged are reasonable, the court presumes that the lodestar figure is a reasonable fee).

The court also has considered the *Johnson* factors. It finds that several of these factors are neutral here because they don't affect the reasonableness analysis. These factors include: (4) preclusion of other employment by the attorneys due to acceptance of the case; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. Also, several other *Johnson* factors are "subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Fox*, 258 F. Supp. 3d at 1254 (citation and internal quotation marks omitted). Thus, the court need not consider those factors because the lodestar analysis already has accounted for them. *Id.* These factors include: (1) time and labor required; (2) novelty and difficulty of the questions presented in the

18

case; (3) skill requisite to perform the legal service properly; (5) customary fee; and (9) experience, reputation, and ability of the attorneys.

The eighth *Johnson* factor—the amount involved and the results obtained—is the "most critical factor in determining the reasonableness of a fee award[.]" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (citation and internal quotation marks omitted). Here, the amount involved was disputed, both on liability and damages, and hotly contested by defendants. The "result obtained" is a jury verdict for plaintiff awarding plaintiff $365,200 in compensatory damages for its RICO claims, $182,600 for its fraud and civil conspiracy claims, and $3,250,000 for punitive damages. This award is substantial, and the court finds that the "result obtained" factor heavily favors awarding plaintiff the requested attorneys' fee award.

None of the *Johnson* factors presents any reason for the court to adjust the lodestar upward or downward. To the contrary, the court concludes that the *Johnson* factors strongly support and warrant an award of attorneys' fees in the amount of $489,853.50. The court thus finds that the requested fee award is a reasonable one.

Also, plaintiff seeks an award of $68,967.21 in expenses for document management fees, travel expenses, transcript costs, and expert fees. Doc. 458 at 18–19; *see also* Doc. 458-1. A prevailing party is permitted to recover "reasonable out-of-pocket expenses not normally absorbed as part of law firm overhead[.]" *Brown v. Gray*, 227 F.3d 1278, 1297 (10th Cir. 2000). The types of expenses plaintiff seeks here are ones that courts typically permit a prevailing party to recover. *See id.* (explaining that "[s]ome expenses, such as travel, may be included in" an award for fees and expenses); *see also Wirtz v. Kan. Farm Bureau Servs., Inc.*, 355 F. Supp. 2d 1190, 1207–09 (D. Kan. 2005) (granting in part a request for an award of cost and expenses including expenses for postage, photocopies, deposition transcripts, and expert witness fees).

Case 6:16-cv-01432-DDC   Document 459   Filed 03/11/22   Page 20 of 20

The court finds plaintiff's requested expenses reasonable, and it awards plaintiff $68,967.21 in expenses.

For these reasons, the court finds reasonable plaintiff's request for an award of $489,853.50 in attorneys' fees and $68,967.21 in expenses.  The court thus grants plaintiff's request for attorneys' fees and expenses in these amounts.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Plaintiff Watchous Enterprises, LLC's "Motion for Assessment of Attorneys' Fees and Reconsideration" (Doc. 452) is granted in part and denied in part, consistent with this Order.

**IT IS SO ORDERED.**

**Dated this 11th day of March, 2022, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**
